---

PEEPLES *v.* BOYKIN *et al.*

[96 South. 177. No. 23243.]

TENANCY IN COMMON. *Tenant in common cannot acquire title against cotenant in absence of notice; recorded deed by tenant in common held notice to cotenant of adverse claim.*

It is well settled in this state that one tenant in common cannot acquire title by adverse possession against his cotenant until they have actual notice of the adverse claim or knowledge of such facts as are tantamount thereto. But when one tenant in common places a deed on the deed records of the county where the land lies showing title on its face to himself in fee, such deed is notice to the world of the claims shown by its recitals, and if after such record possession is held adversely and uninterruptedly for more than the statutory period, it will vest full title in the person in possession against his cotenant.

APPEAL from chancery court of Bolivar county.
HON. G. E. WILLIAMS, Chancellor.

Bill for partition by W. G. Peeples against Mrs. Lena Boykin and others. Judgment for defendants, and plaintiff appeals. Affirmed.

*Wells, Stevens & Jones,* for appellant.

The only authority seriously relied on by appellee is the case of *Gardiner* v. *Hinton,* 86 Miss. 640. As we understand the Gardiner case counsel is rather unfortunate in having cited it, for we believe we will demonstrate that it is squarely against them. But before analyzing the opinion in that case we wish to call the court's attention to some very essential differences between the facts of the case at bar and the facts of the Gardiner case.

In the first place, in the Gardiner case a deed from one of the tenants in common was made to a stranger to the cotenancy. The cotenant, Isaiah Creel, made a deed to John Creel to the entire property. John Creel was not a cotenant with any one of the property conveyed to him, although Isaiah Creel and Mrs. Hinton were cotenants, while in the case at bar Mrs. Boykin was a cotenant with her brother and sister, who conveyed to her.

In the second place, the deed in the Gardiner case did not recite that the grantor conveyed as an heir at law, nor as a cotenant with any one. He conveyed purely and solely as absolute owner, while in the case at bar, Mrs. Boykin's brother and sister conveyed to her as heirs at law, and the deed on its face recites that it is a conveyance by two cotenants to another.

In the third place, in the Gardiner case, John Creel conveyed the property to the manufacturing company who sold it to Kamper, who sold it to Gardiner, and others, all of whom entered into possession and occupied the property under their respective deeds, while in the case at bar Mrs. Boykin has never sold the property to a person who was a stranger to the cotenancy, and the record in the instant case reveals that her possession at the most was a mere scrambling one.

We will now discuss the opinion in the Gardiner case, and will undertake to show that it is squarely in the face of the contention of the appellee.

The court in the Gardiner case referred to the cases of *Hignite* v. *Hignite,* 65 Miss. 449; *Alsobrook* v. *Eggleston,* 69 Miss. 836, and *Bentley* v. *Callahan,* 79 Miss. 304, and

while it stated that the facts in the Gardiner case did not come within the rule laid down in the above cases, the court did say, with reference to the doctrine of those cases, as follows: "We maintain that doctrine in its fullest extent, and with unimpaired force, in cases when properly applicable. But in the instant case there is no effort on the part of any cotenant, or any one who ever occupied that position toward appellee, to acquire a paramount title to the common estate."

We wish to observe here that the observations of the court in the Gardiner case with reference to the cases we rely on is a demonstration of our contention that the case at bar comes squarely within those cases, and we quote what the court had to say with reference to them, at page 615 of the 86th Miss. Rep.

"The Hignite case is one where a cotenant in possession, sought to acquire a hostile title to the whole interest in the land, and, without giving notice of his intention, assert the same against his cotenant. The Alsobrook case is one where one in possession, in recognition of the rights of his cotenants, holding under a deed conveying only a half interest in the land, endeavored to set up this character of occupancy as an assertion of an adverse holding against his cotenants. The Bentley case also presented the instance of one cotenant seeking to found claim of title to the whole interest in the land upon an occupancy which was 'by law presumed to be permissive of his cotenants.' An analysis of those cases shows that in each instance it was an effort on the part of one cotenant to acquire for himself an absolute title to the common estate. This under universally recognized principles, he was not permitted to do, and we have no purpose to vary or modify the views announced in any one of those opinions."

That the question of cotenancy, or the attempt of a cotenant to assert a hostile title against another, was not involved in the Gardiner case is found in the following language of the court in its opinion therein: "The case at

bar presents no question of an attempt on the part of any cotenant, or any person who ever occupied the relation of cotenant, to assert any paramount title in himself."

In truth, the whole question in *Gardiner* v. *Hinton,* was whether or not a conveyance by one cotenant to a stranger to the cotenancy, of the entire property, constituted color of title on which the grantee and his vendees might predicate adverse possession, and the court held that it was, and all of the cases cited by the court in the Gardiner case are cases where one cotenant conveyed to a stranger to the cotenancy the entire tract, and where the stranger entered into possession of the entire tract, and the title ripened in him and his vendees by adverse possession.

The case at bar, however, presents an entirely different set of facts. The deed relied on by the appellee was a deed from two of her cotenants. No rights of a stranger to the cotenancy are involved herein. This is a scrap entirely between cotenants, and is a palpable effort on the part of one cotenant to assert a hostile claim against another cotenant, without even being in actual possession of the property, and without giving any notice of any kind of her adverse holding. We might concede that the record showed that Mrs. Boykin was in absolute possession of the property, and yet it would be lawful, and her cotenants might rely upon her possession as being held for their benefit, and the law so presumes until she has given notice to the contrary either actually, or by such overt acts of hostility to their title as would put them on notice, and this record is absolutely silent so far as showing that Mrs. Boykin so acted.

If Mrs. Boykin is permitted to obtain title to the lands in this suit in the manner in which she attempted to do so, there can never be any safety for cotenants in relying upon the possession of another cotenant as being for the joint benefit of all, and no one's patrimony would be safe unless he instantly had it set off to him in kind, and fenced it with a stone wall as soon as possible after inheriting it.

We will close with one further observation, and that is the quotation in appellee's brief from 2 Corpus Juris, page 165, par. 311, is simply a statement of an exception to the rule which obtained in only one state of the Union, as will be shown by the authorities cited in the note in the volume referred to. Appellee is attempting to take the single, solitary exception to the rule, and lead this court to the adoption of it as the rule and guide in this state. The very language: "It has been held, however—" shows the antagonistic point of view of the editorial mind who wrote the quotation relied on, and shows that it was written purely for the sake of accuracy, and not as stating the correct view of the law.

*Fred Clark* and *A. B. Sparkman,* for appellee.

In 1 Ruling Case Law, page 741, par. 61, we find the following: "It is not questioned, however, that one cotenant may oust the others, and set up an exclusive right of ownership in himself, and that an open, notorious and hostile possession of this character for the statutory period will ripen into title as against the cotenants who were ousted."

In support of this test there is given in note 6 a long list of authorities, among which is the case of *Root* v. *Mc-Ferrin,* 37 Miss. 17. In the same volume of Ruling Case Law. par. 62, page 743, under the heading "When Cotenants Possession Becomes Adverse," we find the following:

"Where one cotenant assumes to convey the entire estate or any part of it, his deed or other instrument, though legally insufficient, constitutes color of title in the grantee, and an adverse possession thereunder for the statutory period will ripen title as against all the cotenants."

In support of this text, under note 16, there is given a long list of cases, among which is the case of *Gardiner* v. *Hinton,* 86 Miss. 604, a further discussion of which will be presented later in this brief.

2 Corpus Juris, page 165, par. 311, lays down the following rule: "It has been held, however, that the possession of land by grantees in a deed, wherein grantors described themselves as the sole heirs of the original owner, is adverse to the other heirs of the original owner from the time that the deed is placed on record." In support of this text there is cited the case of *DeLeon* v. *McMurray,* 23 S. W. 1038, and the attention of the court is respectfully invited to this decision.

We are not, however, confined in this case to authorities from courts other than our own to absolutely sustain the position taken by the appellee in this case, but as we view this record and the facts of this case, the case of *Gardiner* v. *Hinton,* cited in support of the text in Ruling Case Law is absolutely decisive of the case here presented.

In the instant case we have the deed in 1904 from Henry Rosser and Lillian Rosser Keer conveying an undivided two-thirds interest in the property in controversy to Lena Boykin and reciting on its face that Henry Rosser and Lillian Rosser Keer, the grantors, and Lena Boykin, the grantee, were the sole and only heirs at law of M. J. Rosser, deceased, and we have the use, occupancy and possession of the land, as shown by the record, of the appellee herein, continuously since said date, and we have the further fact, as shown by the record, that never since the occupancy of appellee began in 1899 has she ever recognized any claim of appellees as cotenants, nor has she ever occupied the relation of cotenant toward them, and we have her holding, using and occupying the property in controversy as her own, adversely, continuously for more than ten years from the date of the recording of the deed from her brother and sister to her, mortgaging and otherwise asserting acts of exclusive ownership from that time to now, and bringing the case squarely under the case of *Gardiner* v. *Hinton* decision.

In the case at bar, as was said in the Gardiner case, the nature of the occupancy and the extent of the posses-

sion, the character of the control, the right of ownership exercised over the land, and the recording of the deed from other cotenants conveying the title to appellee in severalty, in the eyes of the law, constitutes notice not only to appellant, but to the rest of the world, and having been uninterruptedly continued for more than the statutory period under these circumstances, appellee's title was, at the institution of this suit, full and complete, and we respectfully submit to the court that the decree of the learned chancellor was in all things correct and proper, and that the same should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellant filed a bill for partition against the appellees and others, alleging that his mother, Mrs. M. J. Rosser, died intestate in Bolivar county, Miss., in the year 1899, seized and possessed of certain lands described in the bill; that she was twice married in her lifetime, the first time to Wash Peeples, to which union were born two children, W. G. Peeples and Mary Peeples, who later married one Ragland; that by the second marriage to one Rosser she had four children, Lena Rosser, Lillian Rosser, Henry Rosser, and another child who died before reaching majority, unmarried and without issue; that Mary Peeples Ragland died prior to the death of her mother, but left surviving her her husband and two children, John Ragland, a son, and Lily Ragland, a daughter; that said Mary Peeples Ragland died intestate; that Lily Ragland, her daughter, married one Dave Lester, and to this union was born one child, Emma Lester, who is now a minor; that said husband and daughter are the heirs of Lily Ragland Lester. It is further alleged that on the 16th of May, 1904, Henry Rosser and Lillian Rosser, then Lillian Rosser Keer, conveyed to the defendant Lena Rosser Boykin all of their interest in the said property by deed recorded in Book 5, at page 176, of the Records of Deeds at Cleveland, Bolivar county, Miss., a copy of which is made an exhibit

to the bill, and alleges that said Mrs. Lena Boykin is now the owner of an undivided two-thirds interest in said property, and that said W. G. Peeples is the owner of an undivided one-sixth interest therein; that the Raglands, or the descendants of Mary Peeples Ragland, are the owners of the other one-sixth undivided interest, the bill setting out the interest of each of the defendants in the said property, and praying for partition of the said property.

The Ragland defendants were residents of the state of Oklahoma, and answered the bill admitting the allegations thereof and joined in the prayer for a division. The appellee Lena Rosser Boykin at the time of the filing of this suit was insane, being an inmate of the State Hospital for the Insane at Jackson, Miss., and A. B. Sparkman was appointed guardian for said Lena Rosser Boykin, and as such filed his answer admitting that the Yazoo & Mississippi Valley Railroad Company in 1895 conveyed to Mrs. M. J. Rosser the lands in controversy, and admitted that Mrs. M. J. Rosser died intestate, and that she left Lena Rosser, Lillian Rosser, and Henry Rosser and —— Rosser, a minor who died before reaching majority, unmarried and without issue, but neither admits nor denies that W. G. Peeples and Mary Peeples Ragland, descendants of Mrs. M. J. Rosser, were heirs, but called for proof on that issue, and neither admits or denies the marriage of Mrs. M. J. Rosser to Wash Peeples, and that to that union were born W. G. Peeples and Mary Peeples Ragland. They admit the marriage of M. J. Rosser to Rosser and the allegations of the bill with reference to the Rosser children. They likewise neither admit nor deny the allegations with reference to the marriage of Mary Peeples to Ragland and as to the descendants of Mary Peeples Ragland as alleged in the bill. They admit that on the 16th day of May, 1904, Lillian Rosser Keer and Henry Rosser conveyed to Mrs. Lena Rosser Boykin all of their interest in the said property by deed recorded as alleged in the bill. They set up, however, that Lena Rosser Boykin is the owner in fee of the property by virtue of the statute

of limitations, she being in possession at the time of the making of said deed and continuously thereafter until now, exercising all rights of ownership under said deed, and that she gave incumbrances thereon as such owner which were placed of record in 1904, 1905, 1906, and 1907, which appeared upon the public records of the county.

The deed from Henry Rosser and Lillian Keer, formerly Lillian Rosser, to Lena Rosser Boykin, reads as follows:

"This indenture witnesseth that the grantors, Henry Rosser and Lillian Keer, both heirs at law of M. J. Rosser, deceased, for and in consideration of the sum of thirty-five dollars, cash in hand paid, convey and warrant unto Lena Boykin, of Cleveland, Bolivar county, and state of Mississippi, the following described real estate, to wit: Our two-thirds undivided interest in and to the land inherited by us and the grantee from our mother, M. J. Rosser, deceased, the same having been purchased from the railroad by our said mother and being more particularly described as follows: Southwest quarter of the southwest quarter of the southeast quarter of section 23, township 22, range 5 west, situated in the county of Bolivar, in the state of Mississippi— hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of this state. The above land is now owned by us and the grantee herein as the only heirs at law of our said mother and it is our intention to convey all interest in said land which we inherited from our said mother.

"Dated this 16th day of May, 1904.

"[Signed] HENRY ROSSER.

her
"LILLIAN X KEER."
mark

"Witness:

"W. B. BOYKIN."

This deed was acknowledged and filed for record in Bolivar county, at Cleveland, Miss., on May 20, 1904, and recorded on May 27, 1904.

The appellant, W. G. Peeples, lived at Grenada, Grenada county, Miss., in which county Mrs. M. J. Rosser

lived prior to her marriage to Rosser and prior to her removal to Bolivar county. Lena Rosser Boykin, half-sister of W. G. Peeples, notified him about three months after the death of his mother, Mrs. M. J. Rosser, that she was dead and buried, but gave no notice that she owned any property. He said that he had no knowledge that she had any property; that prior to her removal from Grenada county he contributed to his mother's support, but after her removal he understood she was being supported by Rosser, her husband; that W. G. Peeples never heard from any of them thereafter, and never saw any of them until the year 1920, when he made a trip to the delta section, and while there decided to look up his relations; that he visited Octa Boykin, a son of the defendant Lena Rosser Boykin; that in conversation with him he asked him as to what they were worth, if they owned any property; that Boykin told him about Mrs. M. J. Rosser having forty acres of land bought from the railroad company and some land which her husband left; that thereupon he, said W. G. Peeples, went to one Rosser, a son of the husband of Mary J. Rosser, who informed him to the same effect; that he then went to the records of Bolivar county and found the deed of record; that he filed suit soon thereafter.

It does not appear that the Raglands or the Oklahoma defendants had any knowledge of either the death of Mrs. M. J. Rosser or of her ownership of the land or of any right they had in said lands. There was full proof of the heirship of the Peepleses and the Raglands and of the marriage of Mrs. Rosser to Peeples first and of the birth of the two children by Peeples named above.

The chancellor found that Mrs. Lena Rosser Boykin was the sole owner of the place under and by virtue of her possession and claim of ownership under the facts above stated.

It is contended by the appellant that the possession of Lena Rosser Boykin, she being one of the cotenants, was the possession of all, and that they had no notice of any hostile assertion or claim of ownership by Lena Rosser

Boykin, and indeed that they had no knowledge of any kind of her right in and to the land; that, inasmuch as Mrs. Boykin and her brothers and sisters through whom she claims title had knowledge of the rights of the appellant and his sister, she cannot claim adverse possession, because she gave no notice expressly, and they had no notice of any fact from which knowledge of the hostile assertion could be known or claimed.

It is well settled in this state that one tenant in common cannot acquire title by adverse possession against his cotenants until they have actual notice of the adverse claim or knowledge of such facts as are tantamount thereto. The question for decision here is the taking of the deed above set out with its recitals and the fact that it was placed of record in the deed records of the county, and incumbrances also placed of record sufficient to give notice to the appellant and the descendants of his sister of such hostile assertion.

We are of the opinion that the placing of the deed of record gives notice to the world of the contents of the deed, and that such notice in this case is ample to warrant the institution of an ejectment suit against the tenant in occupancy for a wrongful ouster.

The appellant relies upon the cases of *Day* v. *Davis,* 64 Miss. 253, 8 So. 203; *Hignite* v. *Hignite,* 65 Miss. 447, 4 So. 345, 7 Am. St. Rep. 673; *Bentley* v. *Callaghan's Ex'r,* 79 Miss. 302, 30 So. 709; *Watson* v. *Vinson,* 108 Miss. 600, 67 So. 61; *Alsobrook* v. *Eggleston,* 69 Miss. 833, 13 So. 850; *Humphrey* v. *Seale,* 125 Miss. 207, 87 So. 446.

While the appellees rely upon *Gardiner* v. *Hinton,* 86 Miss. 604, 28 So. 779, 109 Am. St. Rep. 726, as exactly controlling this case, we do not think that either of these cases decide the exact case before us. In *Gardiner* v. *Hinton,* 86 Miss. 604, 28 So. 779, 109 Am. St. Rep. 726, the defendants were purchasers from a cotenant under a chain of deeds absolute on their face conveying the entire fee, and were not tenants in common with the complainant. They had been in possession, claiming to be the sole owners

thereof for more than the statutory period, although the deed from one of the cotenants to the other purporting to convey the fee and the deeds from that grantee to the subsequent buyers were not placed of record until within the ten-year period. However, the deed in this case recites that the grantors and grantees are the sole heirs of Mrs. M. J. Rosser, deceased. If this claim had been brought to the attention of the other parties promptly on the execution of the deed, and they had not taken action to assert their rights within the statutory period thereafter, it is clear that they could not prevail at this late day. If the record of the deed imparts notice to the world of its contents, and we think it does, then this is as effectual for setting the statute in motion as actual notice would have been.

It appears to us that a party would be under some duty after notice of the death to make some investigation or inquiry as to what property the decedent had. But, whether that be true or not, the recording of the deed in 1904 gave notice of the claim asserted by the defendant under the deed.

The chancellor having held in accordance with these views, the judgment is affirmed.

*Affirmed.*