RUSSEL B. SHELBY v. W. L. RHODES ET AL.

[62 South. 232.]

TENANTS IN COMMON. *Acquiring outstanding title.*

The rule which prevents one tenant in common from purchasing an outsanding title to the common property and setting it up against his cotenant, is founded upon the confidential relation which is presumed to exist between them, and has no application where the circumstances surrounding them negative any such relation, as show that they, though in law tenants in common, are not such in fact, and are asserting hostile claims against each other with reference to the common property.

APPEAL from the chancery court of Coahoma county. HON. M. E. DENTON, Chancellor.

Suit for partition by Russel B. Shelby against W. L. Rhodes and others. From a decree dismissing the bill, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Maynard & Fitzgerald,* for appellant.

We contend, first, that upon the death of Mary E. Shelby, Russel B. Shelby and W. W. Shelby became tenants in common in the property in controversy, regardless of whether the title of Mrs. Shelby was good or not. Section 1543, Code 1890; *Faulkner* v. *Thurman,* 23 So. 584, and the unbroken line of authorities since that time. It is an elementary principle of law in the state of Mississippi that whatever claim the ancestors may hold to the lands descends to the heirs and cotenants.

Second, that the deed from W. W. Shelby to W. L. Rhodes conveyed to said W. L. Rhodes a one-half undivided interest in the property and created a tenancy in common between W. L. Rhodes and Russel B. Shelby, complainant herein.

"A sale by a joint tenant, or tenant in common, of the whole of the common property, passes only his interest therein and does not affect the interest of his cotenant in common with the other original tenant." 17 Am. & Eng. Ency. of Law (2d Ed.), 680.

"Alienation of the whole of the common property by a cotenant conveys only his individual interest and leaves the cotenant in the same position with each other and the purchaser." Code, 1906, section 2774.

It makes no difference whether Rhodes intended to take as a cotenant or not, or whether he intended to hold adversely to the complainant herein. By operation of law, as above stated, he was created a cotenant, and as he could not bring to the notice of the minor his intention to hold adversely to him he will be presumed by this court to have held the title and possession for his cotenant.

"Tenants in common by descent occupy a confidential relation towards each other by operation of law as to joint property, and the same reciprocal duties are imposed as if a joint trust were created between them or by act of a third person, and their mutual duties to sustain and protect the common interest will be vindicated and enforced in a court of equity as a trust, and they, and those claiming under them, with notice, cannot assume a hostile attitude towards each other in reference to the common property."    38 Cyc. 15; *Clements* v. *Cates,* 4 S. W. 776.

The above case is well presented, directly in point and we ask a careful reading by the court.

"C. T. and B. owned the lands as tenants in common and "C" was in possession.    His possession could not become adversary to them or those claiming under them, without notice that his claim was antagonistic.    There must be shown such an intent to oust as would justify them in bringing an ejectment suit against him."    *Bentley* v. *Callighan,* 29 Miss. 304; *Day* v. *Davis,* 65 Miss. 253; *Hignite* v. *Hignite,* 65 Miss. 447.

Third, that being such cotenant W. L. Rhodes could not purchase the outstanding title to the common property to defeat cotenant's title, and if said purchase was made it inured to the benefit of all the cotenants, even though the common title under which the property is held is not a true title.

"Where one of the several tenants in common purchased an outstanding title the fact that the common ancestor of all the cotenants had no title, or a defective title, will not shield him from liability to account to his cotenants as trustee of the property purchased; the opposite rule would abrogate the doctrine forbidding the purchase by one tenant in common of an outstanding title adverse to his cotenants."    *Slement* v. *Cates,* 4 S. W. 776.

"To hold that appellees are not entitled to the benefit of the purchase of appellant because their father had not

a legal title at the time of his death would be a denial of the rule forbidding one cotenant taking advantage of the defect in a common title by purchasing an outstanding title or incumbrance and asserting it against his companions and interest. Where is the difference between a want of title and a defective title? If the outstanding title is paramount to that of the cotenant they in fact have no title. To hold therefore that those holding as cotenants are only bound by the rule when they have title is holding that they are bound by it only when it can afford no protection one against the other and that they are free to disregard the relations of trust and confidence, the rule was adopted to uphold, except where neither can injure the other." Ibid. 778.

"A cotenant cannot in an action against him by hi cotenant to be let into possession justify an ouster of plaintiff by setting up an outstanding title purchased by him while in possession under the common title, although such title so purchased be the true one." 38 Cyc. 43, and note 61.

"Where two cotenants are in possession of land under an imperfect title devised by a common ancestor one of them cannot buy an adverse outstanding title to dis-seize or expel his cotenant, but such purchase will inure to the common benefit." 5 Johnson, Chancery (N. Y.), 388, Law Ed. Chanc. Rep., Vol. 1, p. 1118 and note; also *Venable* v. *Bauchamp*, 28 Am. Dec. 74.

"The same policy of the law which prevents one tenant in common from buying up and successfully asserting as his own an outstanding title against his cotenant appertains when a cotenant seeks by showing the true title in another to defeat another cotenant of any right which the latter may undertake to assert." 96 Miss. 394.

"No outstanding title can be set up to defeat the claim of the complainants as owners, whether the party attempts to assert it as owner or merely attempts to show that it exists in another." Ibid. 395.

Fourth, that Bessie T. Rhodes, the wife of W. L. Rhodes, at the time she purchased the outstanding title, of Lula B. Lindsley stood in relation to Russel B. Shelby, her husband's cotenant, exactly as her husband did, namely, she was a cotenant and could not purchase the outstanding title.

"One whose wife owns an undivided interest in lands, is, upon grounds of public policy, disqualified from purchasing a superior title so as to obtain the cotenant's interest."

Also "If the rule which prevents one spouse from securing a title where the other is disqualified rested only upon a supposed privity or estate between them, it might well be argued that our statutes, on the subject have destroyed its foundation. But the rule is found in good considerations and public policy, and conclusively imputes to the one, as derived from the other, knowledge of those facts the existence of which precludes the other from action. The opportunities that would be afforded for fraudulent practices would be so numerous and the difficulty of exposing them so great, that courts apply the doctrine of estoppel to both, and thus closes the door that offers the temptation." *Roberson* v. *Lewis,* 68 Miss. 69; *Clark* v. *Rainey,* 72 Miss. 151; *Hamblett* v. *Harrison,* 80 Miss. 118; *Smith* v. *McWhorter,* 74 Miss. 400; *Beaman* v. *Beaman,* 90 Miss. 762.

Fifth, that neither W. L. Rhodes nor Bessie T. Rhodes can question the common title under which they obtained possession of the land in controversy in this or any other suit, and this whether the common title was the true one or not.

"A tenant in common claiming a right to the possession of property as such will not be permitted to assail the common title or call its validity into question. 17 Am. & Eng. Ency. Law (2 Ed.), 680.

"If from the pleading or evidence it appears that there is a common source of title, or in other words a

grantor ancestor under whom all the parties claim, it is sufficient to prove title from or under him and not at all necessary to show the source of his title.'' 30 Cyc. 245; 54 N. E. 1014; Code 1906, sec. 551.

''Where both parties claim from a common source this is an admission that the title is in such source, and if the complainant shows that he had the title derived therefrom he is entitled to a decree without further proof of title.'' 67 Miss. 729.

It is true that the answer denies the common source of title but the allegations of the answer explain why this common source of title is denied. It is not denied that defendant went into possession of the land under the deed from W. W. Shelby, and by answer to interrogatory No. sixteen and cross interrogatory No. two, W. L. Rhodes, the defendant, admits that he went into possession of the property and was living on it two or three years before he knew that Russel B. Shelby claimed to own any interest in the land. Defendant was at that time in possession under the deed from the common source of title and is of course estopped from denying the title.

Sixth, that although W. L. Rhodes accepted the deed from W. W. Shelby as conveying the whole of the property, he, nevertheless, could not hold adversely to his cotenant Russel B. Shelby, the complainant. 64 Miss. 253; 65 Miss. 447; 79 Miss. 302.

Especially since complainant was at all times, until the filing of this suit, a minor to whom no notice of adverse possession could be imputed or actually given. Section 2746, Code 1890; section 3106, Code 1906; *Bentley* v. *Executor*, 79 Miss. 302.

''A tenant in common out of possession has a right to rely upon the possession of his cotenant as one held according to the title, and for the benefit of all interested, until some action is taken by the other evidencing an intention to assert adverse and hostile claim. If one en-

ters upon the land of a sole owner, and without his consent, he must know that such possession exists, and; within the time permitted by law, take steps to vindicate his right. But the possession of a cotenant is a lawful possession, and of and by itself is not an evidence of an ouster.'' *Hignite* v. *Hignite,* 65 Miss. 449; *Aslobrook* v. *Eggleston,* 69 Miss. 836.

*D. A. Scott* and *A. D. Somerville,* for appellees.

If the title of Miss Lindley went to Mrs. Shelby, and at her death descended to her husband and son, the appellant, they for the time being may have stood as tenants in common, but it is conceded that this title never, at any time went to Mrs. Shelby, and Miss Lindsey never, at any time, conceded or recognized that she had in any way parted with her title to the whole or any part of the property. And, all of the proof shows, she never had in fact done so. She, therefore, during all of the time until she sold and conveyed to the appellee, Bessie T. Rhodes, stood as, and was an adverse claimant of the title paramount as the owner in fee simple of the whole property.

Wherefore, we say that no tenancy in common could have arisen as between any of the Shelbys, and the appellee.

If it can be said there was any common source of title as between the appellant and the appellee, W. L. Rhodes, then that common source was Mrs. Mary E. Shelby, who never, at any time, had title to or right to the possession of any part of this land.

W. W. Shelby could not have been, and was not, the common source of title. If the appellant and the appellee, W. L. Rhodes, had any interest whatsoever in this property, they must go to Mary E. Shelby as the common source of title; for it seems that Mrs. Shelby had some pretended claim or pretended color of title to the whole property under the deed to her from Miss Lindsley's father, and whatever interest she may have had went, upon her death, to the appellant and his father.

Upon the execution of the deed by W. W. Shelby, to the appellee, W. L. Rhodes, the latter became the owner of whatever pretended interest his grantor had in this property, and he and the appellant thus acquired Mrs. Shelby's putative claim to or interest in this property, share and share alike. This being the state of case, we wish to discuss, not at any great length the proposition that even though we should admit that the appellee, W. L. Rhodes could not have rightfully purchased or set up Miss Lindsley's paramount title to this property, yet, nevertheless, in the state of the titles as above indicated, we shall and do insist that the appellee, Bessie T. Rhodes, rested under no legal duty to refrain from so becoming the purchaser of the property from the true owner, Miss Lindsley, and that she had, and has an equal right in law or in equity to set up this title paramount as against this appellant.

The deed of conveyance, made by Miss Lindsley's father to Mary E. Shelby, was unmistakably void, and the title to the whole property remained in Miss Lindsley, as the owner in fee until she conveyed the same to Mrs. Rhodes.

For this reason and for many other reasons to which we have already directed the court's attention, Mrs. Rhodes manifestly had a perfect right to become the owner of the property in the manner and to the extent she did do.

W. L. Rhodes was in the actual and exclusive possession of the land under color and claim of title to the whole, not in recognition of any pretended claim of title by the appellant. His possession and occupation thereof was open, notorious, continuous and adverse, and during all of the time last mentioned, he claimed the whole property as owner thereof in fee simple.

The deed from W. W. Shelby to the appellee, W. L. Rhodes, was in fee simple and purported to convey the whole with full covenants of warranty, and not an un-

divided interest therein. Under this state of facts the particular questions are:

First, would W. L. Rhodes have been estopped from buying the outstanding, superior and paramount title from the true owner, Miss Lindsley?

Second, was Mrs. Rhodes, the wife of W. L. Rhodes, estopped for any reason, from buying in that title and setting it up against the appellant.

(a) The appellee, W. L. Rhodes, never recognized any cotenancy with the appellant. He does not claim under or through him. His possession and occupation of the property has been notoriously adverse. He never at any time or in any manner recognized any tenancy in common with the appellant. His possession and claim of title to the whole was not subservient to any pretended claim of title by the appellant, but was in open hostility to the same. The appellant and his ancestors, his mother and father, were never in possession of this property; never at any time occupied the same, and after the appellee, W. L. Rhodes, went into the possession of the same, the appellant's claim of title and claim of title by W. L. Rhodes constituted them adverse claimants in every sense of the word.

Under the state of facts and under this condition, we confidently insist that W. L. Rhodes, had he seen fit to do so, could have become the purchaser of any superior outstanding title; that is to say either one of the parties last named, under the facts above stated, had the legal right to purchase the outstanding title which was afterwards purchased by Mrs. Rhodes. Having recently cited authorities to sustain this contention, we will not here trouble the court further.

(b) In as much as a wife is estopped, technically, only in cases where the husband is estopped, Mrs. Rhodes had the right to buy and set up the outstanding paramount title of Miss Lindsley.

(c) This is a proceeding in equity by Shelby to settle the title to the land involved. Under the general and

former law, there could be no partition in equity, where the ownership was in dispute and the question of cotenancy in controversy.

Under the present statutes, all questions of title may be adjudicated in a partition suit in equity, or in a bill to remove clouds upon title, and in both instances the jurisdiction is coextensive with the controversy, in respect to the title, possession, rents, etc. This suit is not only for a partition, but is also for the cancellation and removal of clouds upon the alleged title of the appellant to his pretended interest in this property.

Wherefore, both of the appellees have the right to, and may defend upon the ground of the want of title in the appellant. Certainly the appellee, Bessie T. Rhodes, can defend upon this ground, and defend successfully, because the title of Mary E. Shelby is admitted by the appellant to be void.

This appellee does not, in any sense of the word, claim with the appellant through his mother as a common source of title. On the contrary she claims title solely and entirely by virtue of the deed executed in her favor by the then true owner of this property. The rule is universal, according to our best judgment, that a complainant in either a partition suit in equity or a bill to remove a cloud, must show a valid title as against the world. And this without regard and even in the absence of a valid title in the defendant. This is especially true where the facts show, as they do here, that this appellant never even had a right to the possession of the property involved, much less the possession thereof. And when he admits that no title passed to his mother under E. A. Lindsley's deed, he places in his own pathway to success, an insurmountable obstacle.

(d) As to the appellee, Bessie T. Rhodes, there is not even a pretense that she is or ever was in any sense of the word, a tenant in common with the appellant.

The Code only confers jurisdiction upon chancery courts in suits for partition, where it clearly appears that

the complainant therein is the owner of an interest in
the property of which she has either the possession, or
the right to the possession thereof, and limits all such
suits to controversies, in which it clearly appears that
the parties, complainant and defendants, are cotenants
in the strict sense of that word. In this respect the stat-
utes have been changed; for under previous statutes the
word "parties" was used where "cotenants" now ap-
pears. 38 Cyc. 93, notes 5 and 6; *Ingram* v. *Ware,* 5th
S. and M. 746; *Shearer* v. *Winston,* 4 Geo. 149; 10 Geo.
392; *Stevens Lumber Co.* v. *Hughes,* 52 Miss. 824, 38 So.
769; *Tinnin* v. *Brown, et al.,* 98 Miss. 378; *Gardiner
et al.* v. *Hinton,* 86 Miss. 604; 38 Cyc. 3 and 4; Freeman
on Common Tenancy and Partitions, sec. 86 and 87; *Wil-
liams* v. *Cold Creek, etc., Co.,* 115 Tenn. 578, 112 Am. St.
Rep. 878, and authorities there cited; *Bulen* v. *Palsley,* 21
Pac. 934-935; *Hulick* v. *Scovil,* 9 Ill. (4 Gilmore) 159-170;
*Trisconi* v. *Brandenstein,* 66 Cal. 514, 6 Pac. 384, 385;
*Little* v. *The State,* 8 So. 82; S. C., 89 Ala. 99; *Smalley*
v. *So. Ry. Co.,* 57 S. C. 243, 35 S. E. 489-492; 3 Bl. Conn.
169; *Merger* v. *Mooney,* 63 Cal. 586; *Worcester* v. *Lord,*
56 Me. 265-269; *Busch* v. *Huston,* 75 Ill. 383-387; *Hinsell*
v. *Daggett,* 11 Me. 309-314; *Farrar* v. *Eastman,* 10 Me.
191-195; 38 Cyc. 13-23; 38 Cyc. 25; 28 Cyc. 34 and foot-
notes; Freeman on Cot. and Part., sec. 224; *Sanford* v.
*Sanford,* 99 Minn. 380, 116 Am. St. Rep. 432-434; *Joyce*
v. *Dyer,* 109 Am. St. Rep. 611-612, note; *Sweetland* v.
*Buell,* 79 Am. St. Rep. 676, 681, 682; *Rippetor* v. *Dwyer,*
49 Tex. 498; *Roberts* v. *Thorne,* 25 Texas 728; *Jackson*
v. *Smith,* 13 John's (13 N. Y.) 406; *Smith* v. *Washington,*
11 Miss. App. 519; *Alexander* v. *Kennedy,* 3 Grant. (Pa.),
379; *Jonas et al.* v. *Hanniken,* 69 Miss. 577; 38 Cyc. 43-
44 and 45, and notes page 45; *Johnson* v. *Toulmin,* 18 Ala.
50, 52 Am. Dec. 212; *Bentley* v. *Callaghan,* 79 Miss. 302;
*Gardner* v. *Hinton,* 86 Miss. 603 *et seq.; Tinnin* v. *Brown,*
98 Miss. 378, 395; Code 1906, sec. 3521; *Goff* v. *Coal,* 71
Miss. 46; *Nugent and McWillie* v. *Powell et al.,* 63 Miss.

99; Sec. 1543, Code 1890; section 1649, Code 1906; section 1545; Code 1890; sec. 1651, Code 1906; 38 Cyc. 15-43; *Clement* v. *Cates*, 4 S. W. 776; *Bank* v. *West*, 67 Miss. 729; *Baker et al.* v. *Richardson*, 96 Miss. 394; *Cooper* v. *Fox*, 67 Miss. 237.

SMITH, C. J., delivered the opinion of the court.

Appellant filed his bill in the court below, alleging that he was the owner of an undivided one half interest in certain land; that the other half interest was owned by appellees; and prayed for a partition thereof. On final hearing the bill was dismissed; hence this appeal.

The material facts are that on the fourteenth day of April, 1887, E. A. Lindsley, purporting to act as an attorney in fact of L. B. Lindsley, the then owner of the land, executed a deed thereto to Mrs. Mary E. Shelby, which deed, for reasons not material to the question here involved was void. Mrs. Shelby died intestate in June, 1890, leaving as her heirs at law her husband, W. W. Shelby, and one son, Russel B. Shelby, appellant, who was then a minor. In March, 1898, appellee, W. L. Rhodes, purchased the land from W. W. Shelby, thinking that he was the sole owner thereof, receiving from him a warranty deed, under which he entered into, and has since continued in, exclusive possession of the land. In 1902, Russel B. Shelby being then still a minor, L. B. Lindsley, for a consideration of $1, executed and delivered to Bessie T. Rhodes, wife of W. L. Rhodes, a quitclaim deed to the land, which deed appellees set up in bar of appellant's title.

Appellant's contention is that this deed inured to his benefit and perfected his title to a half interest in the land, for the reason that he and W. L. Rhodes were tenants in common thereof, and therefore neither Rhodes nor his wife could purchase a superior title to the land and use it to his (appellant's) prejudice. The rule which prevents one tenant in common from purchasing an out-

standing title to the common property and setting it up against his cotenant is founded upon the confidential relation which is presumed to exist between them, and has no application where the circumstances surrounding them negative any such relation, and show that they, though in law, tenants in common, are not such in fact, and are asserting hostile claims against each other with reference to the common property.

Pretermitting any discussion of appellee's contention that W. L. Rhodes never became a tenant in common with appellant, for the reason that the deed to Mary E. Shelby, which appellant claims constituted the source of their common title, is not merely defective, but is void, and treating W. L. Rhodes as in law a tenant in common with appellant, since he in fact never admitted any such relation, but entered into the exclusive possession of the whole of the common property, claiming it under a deed which conveyed to him the whole of it, and not an undivided interest therein, it can hardly be said that such a confidential relation existed between him and appellant as to make it inequitable for him to purchase the outstanding title and thus obtain what he intended to and thought he had obtained in the first instance by his purchase from W. W. Shelby, to wit, a perfect title to the property. *Gardiner* v. *Hinton,* 86 Miss. 604, 38 So. 779, 109 Am. St. Rep. 726; *Niday* v. *Cochran,* 42 Tex. Civ. App. 292, 93 S. W. 1027; *Sands* v. *Davis,* 40 Mich. 14; *Hilton* v. *Bender,* 2 Hun. (N. Y.) 1; *Wright* v. *Sperry,* 21 Wis. 336; Freeman on Cotenancy (2d Ed.), sec. 155; 17 Am. and Eng. Ency. of Law (2 Ed.), 678; 38 Cyc. 43.

For the same reason it cannot be said that it was inequitable for his wife to purchase this outstanding title. The fact that appellant was a minor at the time of these transactions is immaterial.

*Affirmed.*