McDonald et al. *v.* Roberson et al.

In Banc. Dec. 31, 1948.

(38 So. (2d) 189)

Livingston & Fair, and Neal Prisock, for appellants.

740

**Martin & Farr,** for cross-appellants.

Brunini, Brunini & Everett, and C. W. Sullivan and T. Price Dale, and Livingston & Livingston, for appellees and cross-appellees.

**Griffith, C. J.**

For many years prior to May 3, 1921, J. J. Coulter and his wife had lived on the land here in question as their homestead. Their daughter Eliza lived with them, and had for many years theretofore. Their other children had married and moved to their own homes, some of them within the same neighborhood. To each of the children, other than Eliza, Mr. Coulter had given a piece of property. One of the sons, D. W. Coulter, the only witness introduced by appellants on this issue, testified: Q. ''Among the children it was freely discussed that he wanted to give each of his children a piece of property?'' A. ''Yes. That is what he did.'' On or about the date first mentioned, Mr. Coulter called in the neighboring justice of the peace and told him that he wanted to deed to his daughter ''the land that he owned there and he wanted him and his wife to hold possession of the land until their death.'' An instrument dated May 3, 1921, was accordingly prepared, executed, acknowledged and promptly recorded, with the supposition of all parties concerned that it was a deed to Eliza to the land, being about 147 acres. Mr. Coulter died on the night of May 3, 1921, and Eliza and her mother continued to live on the land until the death of the mother on August 3, 1923. In a few days thereafter, Eliza moved to the adjoining home of her sister and her sister's husband, Mr. and Mrs. G. B. Roberson, appellees. Eliza retained complete and exclusive possession of the property under claim of title to it, without any counter claim by any person, including her brothers and sisters, until Eliza's death, which oc-

curred on October 2, 1941. Her adverse possession is so adequately and completely proved that it could admit of no question except for the matter now to be mentioned.

After natural gas had been discovered in that immediate territory, but long after the elapse of the statutory period of adverse possession, the question was raised that the instrument dated and delivered May 3, 1921, and which was supposed to have been a deed to Eliza was testamentary in character and conveyed no title. It was so held by this Court in Coulter v. Carter, 200 Miss. 135, 26 So. (2d) 344; whereupon Eliza's title by adverse possession was challenged on the ground that her occupancy was as a tenant in common and could not be adverse to her brothers and sisters in the absence of actual notice to them that she was holding in her sole right and behalf and that they must consider themselves ousted.

In Peeples v. Boykin, 132 Miss. 359, 96 So. 177, this Court held that where a person who would otherwise be a tenant in common remained in exclusive and continuous possession, claiming to be the owner under a recorded deed purporting to convey the entire interest in the property, the title would mature in the occupant on the expiration of ten years from the date of the recordation of the deed, even though the deed in severalty was made by other tenants in common, and there was no visible change in the character of the occupancy after the recordation of the deed, and no actual notice was given by the occupant—the theory being that when the deed was recorded, that fact, coupled with the occupancy under it, gave rise immediately to a cause of action to the co-tenants whose interests had not been conveyed.

The soundness of the opinion in Peeples v. Boykin has been frequently questioned, and we have mentioned it in order to disclose that we do not base our present decision upon it; but ▮▮ we are holding in the present case that the tenants in common had actual knowledge of the purported deed and of its execution, or had such knowledge as to import notice to them of it, and that the

possession was being held under it as a matter of right to the exclusion of all others.

One of the brothers was actually present when the instrument of May 3, 1921, was executed and he testified, in effect, that everybody in the Coulter family knew about it, and no witness disputes this fact. Upon their mother's death, there was a division among her children of certain of the personal property, and all departed leaving Eliza in possession, all of them, as already stated, having knowledge or knowledge amounting to notice that Eliza had a recorded paper which purports to grant to her the entire interest in the land, and there they allowed her to remain in exclusive possession under claim of title without any sort of interference for more than fifteen years. And it is immaterial that it now turns out that the instrument of May 3, 1921, which was thought to be a deed, was of no validity as a deed, for in any event it was color of title in severalty. See Downing v. Starnes, Miss., 35 So. (2d) 536, 537. Therefore, it was not necessary for her to give notice to her brothers and sisters of her exclusive claim,—they had in fact all the notice of it that was necessary.

As already stated, Eliza resided with her sister and her sister's husband on adjoining property until Eliza's death, a period of some eighteen years. She was treated by them as a member of the family, without charge to her for room or board. They ministered to her in her long last illness, as if she had been a daughter. She had no family of her own, although she had a married daughter who had been separated from her by some distance since infancy, with visits of only infrequent occurrence. Eliza was approaching death, as she knew, being affected with an incurable cancer, and she desired to leave the most of the 147 acres to her sister and brother-in-law, with whom she had so long made her home. Accordingly, on September 18, 1941, about two weeks before her death, she made and delivered a deed to her sister and brother-in-law, appellees here, to about three-fourths of the land,

reserving the remainder and all the personal property, including money in the bank.

This deed is attacked on the ground that it is presumptively fraudulent because of the confidential relationship which existed between Eliza and the grantees, and as has often been the case, the opinion in Ham v. Ham, 146 Miss. 161, 110 So. 583, and others along similar lines have been called into service. These cases are entirely without factual application here. ██ The proof is that when Eliza realized that her time was rapidly running out, she asked her physician to bring her lawyer, naming him. The lawyer came, and she went over with him exactly what she wanted to do, getting the lawyer to draw a diagram of the land so that she could point out what land she wanted to go in the deed and what not, and she explained her reasons for her wishes, as to that part to be conveyed, all in the presence not only of the lawyer but also of the physician and two friendly old neighbors, whom she had requested to be present; and the lawyer prepared the instrument exactly as she had directed him to do. The lawyer in the case was a former circuit judge and a man whose character stands above question, and he and the other witnesses present have unreservedly vouched for the integrity of the transaction, beyond which we do not deem it necessary to comment except to add that, so far as the record shows, the daughter was not mentioned when Eliza was giving instructions to omit part of the property from the deed, but the purport and purpose of the silence was apparently recognized by all who knew the pathetic background of the facts.

The other questions raised by appellants and cross-appellants have been examined and no reversible error has been found therein.

Affirmed on direct appeal and on cross-appeal.