FERGUSON *v.* CHANCELLOR, et al.

In Banc. May 9, 1949.

(40 So. (2d) 275)

Buchanan & Montgomery, for appellant.

522

**H. E. Koch** and **Welch, Cooper & Welch,** for appellees.

524

**Smith, J.**

On October 19, 1946, in the Chancery Court of the Second Judicial District of Jones County, appellant filed her original bill praying the court to quiet and confirm her title to the west half of southeast quarter of Section 4, Township 9 North of Range 10 West, situated in said Judicial District and County, and for cancellation of all adverse claims of the defendants to above described lands. The trial court dismissed her bill with prejudice as to an undivided ⅝ths interest therein, and confirmed her title to an undivided ⅜ths interest in the land, subject to an existing oil, gas and mineral lease thereon. Appellant seeks from this Court a reversal of this decree in so far as it dismissed her bill with prejudice as to the undivided ⅝ths interest.

The lands involved originally belonged to the common ancestor of complainant and all of the named defendants and of two of his children not made defendants because they disclaimed, by quitclaim deed, any interest in the lands about which the controversy waged. This common ancestor was John Ferguson, the grandfather of complainant, who died intestate on May 3, 1884, was survived by his widow and ten children, the latter being Angus G. Ferguson, Flora Ferguson Trest, Maggie E. Ferguson, Mary Ferguson Chancellor, Sarah Ferguson McRae, Laura Ferguson McRae, Malcolm H. Ferguson, Carrie Ferguson McRae, Lou Ella Ferguson, and Lamar Ferguson. The two last named were the ones of whom it is stated, supra, they disclaimed any interest and were not parties defendant. They also testified in support of the claim of appellant, their niece, the daughter of Angus G. Ferguson.

The widow, Catherine Ferguson, did not remarry and departed this life intestate on March 23, 1899. Flora Ferguson Trest died without a will on August 14, 1933. Maggie E. Ferguson never married and died intestate on October 20, 1927. Also intestate, Mary Ferguson Chancellor departed this life March 10, 1940. Malcolm Hector Ferguson died January 19, 1891, without having made a will. Angus G. Ferguson, the father of appellant, died January 14, 1941. Therefore, at the time suit was filed five of the children were living, of whom three, as pointed out, ante, were defendants, and the other defendants were the heirs of the other children of John Ferguson, who married and left heirs, making eight shares as to John Ferguson's estate. He was a large landowner, owning between 900 and 1,000 acres in Sections 3, 4, 5, 32 and 33. But that part thereof which is at issue in the case at bar is only the W½ of SE¼ of Section 4, Township 9 North, of Range 10 West, and this must be steadfastly borne in mind.

At the date of the death of John Ferguson in 1884, his widow and children were living in the old Ferguson

homestead, which, was not on any part of the land in this suit. There, they continued to live until the widow died, some of the children died, and others married and moved away, establishing homes of their own elsewhere. Angus G. Ferguson, as the eldest son, was apparently heading the family grouped in this establishment.

On March 4, 1889, Angus G. Ferguson became the purchaser of the lands in suit at a tax sale, and immediately began claiming it adversely to the other heirs, tantamount to denying that they were tenants in common thereafter as to said lands. This continued until his death in 1941, a period of 52 years approximately, during which no challenge of his claim of exclusive ownership was made by anyone in any manner recognized as sufficient at law. Among other acts of adverse possession and notorious exclusive ownership Angus G. Ferguson built his home thereon in 1924, which he and his wife occupied until her death, and he thereafter reserved a furnished room therein continuously at all times for his individual and sole use, which he kept locked at all times. He permitted others to live there at some times, and also rented it out. In 1940 this house burned and he immediately rebuilt it on the same spot. During this period of open claim of exclusive ownership he continuously acted with reference to this property as any owner would act, as to cultivation of part thereof, fences, sales of timber, leasing it, and so on.

In 1934 Angus G. Ferguson conveyed to appellant, his daughter, the W½ of SE¼ of Section 4 aforesaid. This warranty deed contained this clause: "To hold against the claims of all persons. I reserve the right to control and use this property as my home till my death, at which time this reservation ceases." Upon his death complainant took over without challenge or dispute from anyone, until, upon activities in oil developments, and a sudden assertion of right as to cutting timber by a party in interest, she decided to file this suit, which she did in 1946.

In their answer appellees categorically denied the unfavorable allegations of fact in the original bill, and set up the defense that the purchase by Angus G. Ferguson at the tax sale was as a cotenant and for the benefit of all, and that no ouster of his tenants in common had been achieved. Furthermore, that they were not aware of the sale by Angus G. Ferguson to his daughter, Laura Lee Ferguson, appellant, until just before her suit was filed, and her tenure, being less than ten years prior thereto, she had no title by adverse possession. The testimony offered on behalf of appellees was generally negative, and also consisted largely of assertions that the other heirs always claimed an interest in the lands as heirs of John Ferguon, and occasional statements in conversations allegedly had with Angus G. Ferguson, made to and by him, and that he did not always live on the land; and lack of knowledge of his sale of the land to appellant ten years before suit was filed.

It is to be further remembered, however, that he was a preacher and teacher, and always had his home occupied by tenants or guests, and continuously reserved his locked furnished room for use at any and all times for himself solely. He alone paid the taxes, from and after his purchase in 1889, until his daughter commenced to pay them, on this particular piece of land. He never accounted to any of the other heirs of his father for any rents, issues or profits from it, and was never called to account for same. No one in that long period of time ever sought partition or to eject him. It is true that he signed with his co-heirs certain deeds to other portions of his father's estate, and acquired powers of attorney from them to enable him to sell timber on other lands left by his father, but not as to the W½ of SE¼ of Section 4, in either event. This, of itself, seems to us a cogent circumstance in support of his adverse claim to notorious exclusive ownership. Proof was made by disinterested persons, and the brother and sister of Angus G. Ferguson, who were not defendants, that his claim was recognized

by general reputation in the neighborhood, and acknowledged among all of the members of the family.

On the other hand, defendants offered evidence as stated, supra, and as to acts claimed to be inconsistent with exclusive ownership and consistent with cotenancy. But this testimony was weak in comparison with that of complainant and her witnesses, who testified positively to the facts set out above, while appellees in the main dealt in negatives. Furthermore, appellees trained their guns for the most part upon the deed from Angus G. Ferguson to appellant in 1934, and a great deal of the evidence was addressed to the claim that they knew nothing of that conveyance until just before or after appellant filed her original bill, and that no change in the possession of Angus G. Ferguson occurred thereafter to alert them to the fact of the conveyance to his daughter.

This line of evidence, and appellees' argument dealing therewith was fundamentally the basis of the decree unfavorable to appellant in the trial court. The Chancellor said in his opinion dictated into the record: "The question arises as to whether the deed from A. G. Ferguson to Laura Lee Ferguson, reserving a life estate in A. G. Ferguson, who did not die until January 14, 1941, was an ouster or disseisin of all of the other heirs of John Ferguson. If A. G. Ferguson had not retained a life estate, the law in this State is clear that the execution and recordation of such a deed followed by ten years adverse posession would be a ouster and disseisin of the other heirs and the grantee in such a deed would have title in fee simple to the lands, but in this deed there was a reservation of a life estate to the grantor, A. G. Ferguson, and A. G. Ferguson died in January 14, 1941. None of the defendants in this case had actual knowledge of the execution of the deed and the character of the possession of A. G. Ferguson was the same before the execution of the deed and after the execution of the deed. I am, therefore, of the opinion that there was not an ouster or disseisin of the other heirs of John Ferguson until the

death of A. G. Ferguson, which was less than ten years ago.''

The Chancellor was, of course, right in his statement that ''the character of the possession of A. G. Ferguson was the same before the execution of the deed and after the execution of the deed.'' The difference was, he alienated the fee and his own interest was to end with his death. His use and control was a continuation of his exclusive claim, use, control, and as a matter of right, which began in 1889, several times more than ten years before an appellant filed her suit in 1946. As we view it, the title had long since matured in Angus Ferguson before the deed to his daughter, and it was, therefore, of no consequence whether defendants knew of that deed or not.

Appellees rely upon such cases as Gilchrist Fordney Co. v. Ezelle, 141 Miss. 124, 106 So. 269, Clausell v. Riley, 188 Miss. 647, 196 So. 245, and especially Fox v. Wilkins et al., 201 Miss. 78, 28 So (2d) 577, 578, from which appellees quote: ''We need not sustain by citation authorities which compel one operating lands as a cotenant of those to whom he is related by family ties, and who, as their agent, manages a common property for their mutual benefit, to show by clear an convincing testimony the acquisition of a part thereof by adverse possession.'' We think in the case at bar the evidence is clear and convincing that A. G. Ferguson acquired by adverse possession the land involved, and he had a right to sell it to his daughter, ''against the claims of all persons''. Furthermore, Angus G. Ferguson has not been shown by any substantial evidence in this record to have operated the W½ of SE¼ of Section 4, Township 9 North of Range 10 as a cotenant, or as the agent of other heirs of his father. Quite the opposite is established, we think, by a clear preponderance of the proof.

We held in Shelby v. Rhodes et al., 105 Miss. 255, 62 So. 232, Ann. Cas. 1916D, 1306, that (syllabus): ██ ''The rule which prevents one tenant in common from purchasing an outstanding title to the common property and

setting it up against his cotenant is founded upon the confidential relation which is presumed to exist between them, and has no application where the circumstances surrounding them negative any such relation, and show that they, though in law tenants in common, are not such in fact, and are asserting hostile claims against each other with reference to the common property." We think that case is squarely in point here. We are also of the opinion that McDonald et al. v. Robertson et al., Miss., 38 So. (2d) 189, not yet published in state reports, is pertinent to the issues before us, and favorable to contentions of appellant.

In the early case of Iler v. Routh's Heirs, 3 How. 276 4 Miss. 276, this court said: "It is unquestionably true, that in general, the entry of one heir will inure to the benefit of all, and that if the entry is made as heir without claim of an exclusive title, it will be deemed an entry not adverse to, but in consonance with the rights of the other heirs. But it is clear that one heir may disseise his co-heirs, and hold an adverse possession against them, as well as a stranger, and notwithstanding an entry as heir, the party may afterwards, by disseisin and of his co-heirs, acquire exclusive possession, on which the statute will run." We then further said, "Any act of one joint tenant which is evidence of a claim of exclusive ownership, such as taking all the rents and profits to himself, will constitute a disseisin."

 Furthermore with reference to whatever protests and objections by the co-heirs of A. G. Ferguson, the record of the trial of this cause may reflect, they were merely verbal protests or statements and were insufficient to stop the running of the statute of limitations in favor of Angus G. Ferguson, and against appellees. Daniels v. Jordan, 161 Miss. 78, 134 So. 903.

See also Jones et al. v. Hoover et al., Miss., 37 So. (2d) 490, 493, not yet reported in State reports, wherein we said: "Any presumption that the title was being held for the benefit of all the cotenants when this suit was

filed on June 21, 1940, was fully overcome by the fact that W. H. Hoover took possession of the land after the foreclosure on May 21, 1929, in such manner as to amount to complete ouster of his alleged cotenants.''

Appellees contend that there is some dissimilarity of facts in the Iler and Jones cases, as compared with the case at bar. Of course there is, but the facts are comparable enough to justify the application here of principles approved there, which, we think, conclusively control the present suit. Facts may vary, but fundamental principles do not. ▆▆ It is clear to us, in accordance with the overwhelming weight of the evidence that, beginning with his tax purchase, Angus G. Ferguson progressively, exclusively, peaceably, continuously, adversely, and notoriously claimed and occupied the land he conveyed to appellant in 1934, and on that date was the absolute owner thereof, and his daughter is now, and was when she filed her original bill.

We, therefore, hold that the learned Chancellor was manifestly wrong, and the decree of the Chancery Court will be reversed, and decree rendered here for appellant, confirming her title to the entire West half of the Southeast quarter of section 4, and cancelling all claims of the defendants and appellees thereto.

Reversed and decree here for appellant.