ALEWINE, et al. *v.* PITCOCK, et al.

In Banc. June 12, 1950.

No. 37549 (47 So. (2d) 147)

**D. R. Johnson** and **James Stone & Sons,** for appellants.

McClure & Fant, for appellees.

**McGehee, C. J.**

This is a suit for partition of 160 acres of land among the heirs at law of Mrs. Frances Adella Alewine, who died on June 7, 1947. The sole complainant is Mrs. C. C.

Burns, a daughter of the deceased. One of the defendants, F. C. Alewine, who is the appellant here, filed an answer in which he alleged, among other things, that on February 27, 1947, his mother, Mrs. Frances Adella Alewine, was the sole owner of the fee-simple title to said land and conveyed the same to him; and he therefore denied that either the complainant or any of his co-defendants owned any interest therein. The complainant thereupon amended her original bill of complaint by alleging that the deed of conveyance from her mother to her brother, F. C. Alewine, was wholly void for want of mental capacity on the part of the grantor to execute the same. She was unable to prove such allegation of mental incapacity and her bill of complaint was therefore dismissed and she does not prosecute an appeal.

Two of the defendants, who are the appellees, Mrs. Osie Lee Pitcock and Mrs. Daisy D. Lipe, daughters of the said Mrs. Frances Adella Alewine and of her former husband, J. W. Walker, who died intestate on February 14, 1891, made their answer a cross bill and alleged that their father, J. W. Walker, owned the land in question at the time of his death, and that the same thereupon descended to their mother and to the said two defendants as tenants in common; that the said Mrs. Pitcock, then Osie Lee Walker, was five years of age and Mrs. Lipe, then Daisy D. Walker, was three years of age at the time of the death of their father; and that they have never parted with their interest in said land. Hence they asked in their cross bill that they each be declared to be the owner of an undivided one-third interest in said land and that the defendant, F. C. Alewine, be recognized as the owner of the other one-third undivided interest; and that the same be sold for a partition of the proceeds. The trial court granted the prayer of their cross bill, and ordered the sale of said land for a division of the proceeds thereof accordingly.

The several other defendants, as children of Mrs. Frances Adella Alewine, by her subsequent marriage to

F. W. Alewine, are making no claim to any interest in said land, but on the contrary they recognize the conveyance from their mother of February 27, 1947, to their brother, F. C. Alewine, the appellant, as being a good and valid conveyance of the land to him in fee simple.

Therefore, the issue presented for decision is whether or not Mrs. Frances Adella Alewine owned the land in fee simple at the time she executed the said conveyance, shortly prior to her death, which occurred on June 7, 1947.

The fee-simple title asserted by the appellant, F. C. Alewine, depends for its validity as such upon the following facts, to wit: On January 10, 1891, J. W. Walker, the father of the appellees, Mrs. Pitcock and Mrs. Lipe, and who was the then husband of Mrs. Frances Adella Walker, executed a deed of trust on the 160 acres of land, as sole owner thereof, at a time when it constituted no part of his homestead. Hence his wife did not join therein, and she did not sign the note which was secured by the deed of trust. The deed of trust secured an indebtedness of $340.00 owing by J. W. Walker to a Mr. Bell due one year after date. The grantor died shortly thereafter and before the indebtedness became due. Default having thereafter been made in the payment of the indebtedness, there was a foreclosure of the deed of trust on April 30, 1892, and Mr. Bell became the purchaser at the sale. It appears that the trustee's sale was made by a substituted trustee whose appointment was not placed of record prior to the sale, and that the foreclosure was also invalid for other reasons, and with the result that the legal title which the widow and the two children of J. W. Walker inherited on February 14, 1891, as tenants in common, remained in them as his sole heirs at law, subject to the then existing lien of the said deed of trust.

However, on November 15, 1893, Mr. Bell conveyed the land to the said Mrs. Frances Adella Alewine ''and her heirs'' for a cash consideration paid by her of $650.00, she being widow of the said J. W. Walker, and who had in the meantime become married to F. W. Ale-

wine. This deed of conveyance was thereupon duly placed of record, but it inured to the benefit of all three of the tenants in common until such time as there was an ouster of the two children by the grantee.

It appears that J. W. Walker also owned at the time of his death on February 14, 1891, two other tracts of land, one consisting of 40 acres and the other 120 acres adjoining the 160 acres in question, and that these two smaller tracts constituted the homestead; that following the foreclosure sale Mrs. Walker and her two children remained in possession of the 160 acres now in controversy, together with the land which constituted the homestead, but the proof fails to disclose whether or not she paid any rent to Mr. Bell on the 160 acres, which he had purchased at the trustee's sale, for the period of approximately 18 months that intervened before he conveyed the same to her. At any rate, she and her second husband have continued since that time to use this 160 acres of land along with the other two tracts constituting the homestead, and have reared thereon six other children of their own by this second marriage; and the Alewines have never accounted to the appellees, Mrs. Pitcock and Mrs. Lipe, for any of the rents or proceeds derived therefrom, nor have they ever been requested to do so.

The Alewines paid the taxes every year on all of the land from 1893 until this suit was field on May 8, 1948, and during the period beginning in 1906 and ending in 1933 Mr. and Mrs. Alewine executed sixteen deeds of trust on the 160 acres, all of which conveyances were duly placed of record. At some time prior to the death of Mrs. Alewine on June 7, 1947, they built fences and enclosed this land with the "home place" and also constructed a three-room tenant house on and cleared 25 or 30 acres of the 160 acres of land now in controversy, placed the same in cultivation, and have at all times used the same as their own prior to the conveyance to the appellant by Mrs. Alewine. During their possession, a son of the Ale-

wines cultivated a part of the land and paid rent to his mother thereon for a number of years.

The two Walker children became of age in 1907 and 1909 respectively. They married and established their respective homes at a distance of six or seven miles from the land in question, but have never at any time since they attained their majority made any requests for an accounting for rents and profits from the land, or made any effort to have the same partited although their mother ceased to be a widow, with a right to use the same as such, at some time during the year 1893, even if it had been a part of the homestead.

Moreover, on January 17, 1910, the appellees joined their mother in a deed to her husband, F. W. Alewine, conveying to him the 40-acre tract of land, and on January 18, 1911, in another deed conveying to him the 120-acre tract; and it would appear as the only reasonable inference that the failure of the grantee to also acquire their interest in the 160 acres of land here in question when he "bought them out" was due to the fact that it was fully recognized by the appellees that their mother owned the 160-tract by virtue of the conveyance to her from Mr. Bell in 1893. The testimony is that Mr. Alewine "was buying them out of the place" when he bought their interest in the two tracts in 1910 and 1911. At any rate, after selling their interest in the homestead, which was not involved in the foreclosure sale to Mr. Bell, they continued to permit their mother and her second husband to continue using the 160-acre tract of land and exercising all acts of ownership and control over the same for nearly forty years after the sale of their interest in the other two tracts to Mr. Alewine in 1910 and 1911, respectively.

It is therefore unnecessary to invoke the decision made in the case of Peeples v. Boykin, 132 Miss. 359, 96 So. 177, and to hold that the recorded deed of conveyance from Mr. Bell to Mrs. Frances Adella Alewine on November 15, 1893, alone constituted an ouster of the other two

tenants in common; ██ it is only necessary that the holding in that case be invoked along with her long-continued subsequent possession of the land, to support the claim of the appellant, F. C. Alewine, that his mother had obtained title by adverse possession under all the facts and circumstances in this case.

The factual situation in the case of Clausell v. Riley, 188 Miss. 647, 196 So. 245, relied on by the appellees, is in our opinion such as not to make the decision therein controlling in the instant case.

The record fails to disclose that the appellees asserted any claim to the land at any time before the filing of their answer and cross bill in this suit in 1948 after the death of their mother, Mrs. Frances Adella Alewine, except that a few months prior to her death they declined to join her in a deed of conveyance to her son, F. C. Alewine, which had been prepared for execution and recited a consideration of $1,600.00 and from which they were to receive $200.00 each. It is argued that the preparation of this deed for their signatures was a recognition by their mother that they still owned their interest in the land. However, it did not purport to recognize that they owned a one-third interest each in the land as having been inherited from their father, but it rather evidenced a desire on the part of their mother that they should only share in the proceeds of the sale along with her six Alewine children, since she was then at a ripe old age and only lived about three months thereafter. Then, too, there is evidence that her son, under a mistaken belief of the necessity therefor, desired that they join in the deed because of the fact that the deed from Mr. Bell to her in 1893 contained the words "and her heirs". And it was on that account that the lawyer so prepared the deed for execution. But in support of the theory that she considered that the land belonged to her in fee simple she proceeded as sole grantor to deed the same to her son under a deed of gift after the appellees had refused to join in the conveyance to him.

We are of the opinion that the failure of the appellees for a period of approximately 40 years to assert any claim to the land after they attained their majority, when considered in the light of the use and improvement of the land by their mother, and their failure to seek any accounting of the rents and profits from the land during all those years, or a partition of the same for such a long period of time after their mother ceased to be a widow, brings the case within the rule announced in the cases of Randall v. Mitchell, Miss., 41 So. (2d) 44; and Ferguson v. Chancellor, 206 Miss. 518, 40 So. (2d) 275. See also Jones v. Hoover, Miss., 37 So. (2d) 490. McDonald v. Roberson, Miss., 38 So. (2d) 189; and Boyd v. Entrekin, Miss., 45 So. (2d) 848.

It has been long recognized as a part of the land title law of this state that one in exclusive possession of land for more than 31 years, and especially under a claim based on color of title, acquires such a title as may be safely approved by any abstractor or attorney, and in our opinion it would greatly impair the stability of land titles throughout the State if we should not follow this well-settled rule of property. And even though the proof fails to disclose whether or not the appellees knew about the deed of trust and foreclosure sale to Mr. Bell and of the execution and recordation of the deed from him to their mother ''and her heirs'', or as to whether or not they had any knowledge of the sixteen deeds of trust executed by their mother and her second husband on the land, we are nevertheless of the opinion that after the appellees became of age it was incumbent upon them to ascertain their rights in the property earlier than 40 years from the time of attaining their majority, and that their failure to do so constitutes laches and that the exclusive possession and use of the land during such period of time, together with the recorded deed in favor of their mother was sufficient to constitute an ouster of them as tenants in common, and was sufficient to afford actual notice of their mother's claim to the land as her

own. They necessarily knew when they executed the deeds in 1910 and 1911 to their step-father for the other two tracts that they were leaving the 160-acre tract to be enclosed therewith as one farm, and made no effort to claim the interest therein which they now assert.

The decree of the trial court must, therefore, be reversed and the cross bill of the appellees dismissed. No appeal having been taken from the decree dismissing the original bill of complaint, the same is to that extent affirmed.

Affirmed in part, reversed in part, and judgment here for the appellant.