QUARLES, et al. *v.* QUARLES, et al.

Division A. Jan. 15, 1951.

No. 37716 (49 So. (2d) 810)

R. L. Smallwood, Jr., and Chester L. Sumners, for appellants.

J. W. Price and J. W. T. Falkner, for appellees.

McGehee, C. J.

It was decreed by the trial court that the 90½ acres of land involved in this partition proceeding should be sold for a division of the proceeds among the appellees, Lillie Quarles and others, and the appellants, Dennis and Arthur Quarles. The sale was made and confirmed prior to the appeal being perfected by the two defendants who objected to the partition. The said defendants Dennis and Arthur Quarles denied that they were tenants in common with the complainants and their own codefendants and claimed that they alone owned the land in fee simple by reason of their continuous occupancy and alleged uninterrupted adverse possession thereof from the year 1903 until the filing of this suit on April 23, 1947, and on until the time they were dispossessed by order of the trial court when they failed to make a supersedeas bond on this appeal.

The proof disclosed that one G. W. Buford sold the land, which originally consisted of 100 acres, on December 6, 1897, to one Mack Quarles for a recited consideration of 40 bales of cotton. The conveyance failed to recite whether the consideration was then received or within what time the cotton was to be delivered. The grantee died intestate in 1903 and left surviving him his widow, Bettie Quarles, four sons, Preston, Albert, Dennis and Arthur Quarles, and also four daughters.

Prior to the death of Mack Quarles his sons Preston and Albert had left the premises and moved away. The other two sons, Dennis and Arthur, have at all times since the death of their father remained on the land. His widow remained thereon until 1907, when she remarried and moved away, but returned about the year 1914 or 1915 and remained on the land with her said two sons until her death several years later. During her widowhood the land was not subject to partition while she remained thereon and used the same as a homestead. Some, if not all, of her daughters also remained on the land until she remarried, or until they married and moved away, and one or two of them lived thereon for a year or two after their mother had moved away and after they had married, but their husbands worked other lands at that time.

It appears that the oldest son, Preston, who moved away before his father died, never returned to the place, but that Albert, who was employed by the railroad company and later moved to Memphis, visited the place from time to time, furnished a good portion of the lumber out of which the house was built in which the defendants Dennis and Arthur Quarles have resided; and paid the taxes thereon at least for the years 1935 and 1938. Albert died in 1945, leaving as his sole surviving heir at law his wife, the complainant Lillie Quarles. A friend of this couple testified that she came with them from Memphis at least on three occasions when Albert met the defendants Dennis and Arthur at the courthouse and paid the taxes on the land. Albert's wife, Lillie Quarles, testified in effect that her husband paid the taxes on the land from 1931 to 1945 inclusive; that she would send the money for Albert to pay the taxes except the times when either she or Albert paid the same in person. But the defendants Dennis and Arthur Quarles testified that they paid all of the taxes from year to year except on the two occasions when the tax receipts

disclosed that the same were paid by Albert in 1935 and 1938.

The said two defendants who appealed were permitted to testify under a reserved ruling that their father Mack Quarles became unable to work two or three years before his death and that he agreed with these two defendants, after having delivered four bales of cotton each year on the purchase price of the land over a period of about five years, that since he was unable to work they could go ahead and pay out the land and it would be theirs. That Mr. Buford, to whom the cotton was owing, consented to this arrangement and that they continued to pay four bales of cotton per year under this agreement until they finished delivering the forty bales, completing the payment about the year 1908. Mr. Buford died after the death of Mack Quarles and they claim to have delivered the remaining cotton to a member of his family. However, it does not appear any where in the testimony of either Dennis or Arthur Quarles that they, or either of them, ever advised any of the other children or heirs of Mack Quarles, deceased, that they were claiming the land under and by reason of the alleged agreement with their father and Mr. Buford, or that they ever mentioned the same to the other heirs. They held no written conveyance of the land to them, either of record or otherwise, nor is it shown that they ever executed any encumbrance thereon, and a number of the several heirs of Mack Quarles, deceased, testified that Dennis and Arthur Quarles repeatedly stated to them in conversation that the land belonged to all of the heirs. These defendants, however, denied having made these statements, but they failed to show in any manner that they ever brought knowledge home to the other heirs that they were claiming the land as their own, other than by the fact that they remained on the land, used the same without accounting for rents or profits, and paid taxes thereon.

The land was assessed in the name of Dennis Quarles, but it is not shown whether the tax assessor so assessed

the same by reason of the fact that Dennis lived there or whether Dennis caused it to be so assessed.

The record is silent as to what, if any, improvements they ever placed on the land other than the dwelling house for which their brother Albert furnished a good portion of the lumber.

On the other hand, Mr. Reaves, who had at all times lived on adjoining land, testified that the defendants Dennis and Arthur Quarles had stated to him on different occasions that the land belonged to all of the heirs, and testified without objection that he undertook to interest Albert in selling the land, and that Albert would respond by saying that he intended to come back and build him a home thereon when he retired from the services of the railroad company. This witness further testified that he was present at a time when Mack Quarles finished paying for the land by delivering the remainder of the cotton called for by the deed; that he tried to buy this land from Mr. Buford in the early part of 1902 and that the latter agreed to let him have it in the event Mack Quarles should fail to finish paying for it in the fall of that year, and that he was unable to buy it because the said grantor informed him that Mack Quarles had paid for it. The chancellor expressed the opinion, in which he was evidently correct, that this witness was mistaken in his 45 year memory and that Mr. Buford only intended to say that Mack Quarles had met his current payment that year, since it was not likely that he would have had the remaining 20 bales of cotton to pay on the land in the fall of 1902. Therefore, the chancellor seems to have assumed that the future payments were made by Dennis and Arthur Quarles after the death of their father, but during the time when their mother and other members of the family were likewise living on the land and doubtless assisting in making the annual crops thereon.

At any rate, if this incompetent testimony of Dennis and Arthur Quarles as to the arrangement that they had with their father in his lifetime as allegedly then assented

to by Mr. Buford, should be considered as proof in that behalf, the fact would remain that this ██ █ oral arrangement was not sufficient to furnish any color of title, or constitute an ouster as against the other tenants in common, who do not appear to have ever been advised of such parol agreement. Their possession at all times after the death of their father was wholly consistent with their rights as tenants in common of the land. They had a right to remain on it until such time as it should be sold for partition.

Moreover, it appears that sometime prior to 1940 the United States Government instituted condemnation proceedings and condemned 9½ acres of the 100 acre tract for use in connection with the Sardis Reservoir Project, and that Albert Quarles, of Memphis, employed the attorney to represent all of the tenants in common and supervise the distribution among them of the proceeds of the condemnation. It appears without dispute that neither Dennis nor Arthur Quarles made any complaint in regard to the proceeds being distributed among all of the heirs and made no claim, so far as this record discloses, that they were entitled to the entire proceeds of the condemnation of the 9½ acres as the alleged fee simple owners of the land.

Again it appears that on January 29, 1931, Bettie Quarles Lewis, former widow of Mack Quarles, deceased, sold and conveyed her undivided interest in the land here involved to her daughter Jesse Woods, and that this deed was on that day duly placed of record.

That thereafter, about the year 1940 or 1941, Edgar Woods, as the surviving husband and one of the heirs of Jesse Woods, instituted a partition proceeding for the sale of the said lands and the division of the proceeds among all of the heirs. The defendants Dennis and Arthur Quarles were served with process in that suit, but it appears that the same was never tried for the reason that Albert Quarles of Memphis purchased the interest of the said Edgar Woods and obtained a dis-

missal of the suit with prejudice on that account. Edgar Woods was the sole complainant in that suit, and, therefore, the dismissal with prejudice was intended to be as to him since his entire interest had been acquired by one of the defendants, Albert Quarles.

It is true that after the enactment of the homestead exemption law, such an exemption was obtained by the appellant Dennis Quarles. This occurred not earlier than 1938 and was doubtless due to the fact that he resided thereon with his own family, his brother Arthur not having ever married but having remained on the land with Dennis.

In this situation we are not justified in disturbing the finding of the chancellor that the other parties to the present suit had not forfeited their rights in the land by reason of laches in the absence of proof of conduct on the part of the defendants Dennis and Arthur Quarles amounting to an ouster of them as tenants in common.

This opinion will not be prolonged by a discussion of the cases of Ferguson v. Chancellor, 206 Miss. 518, 40 So. (2d) 275, which had not been reported at the time of the trial, and Alewine v. Pitcock, 47 So. (2d) 147, which had not been decided on appeal here at the time of the trial in the instant case, nor the cases of Comans v. Tapley, 101 Miss. 203, 57 So. 567; Randall v. Mitchell, 41 So. (2d) 44; and Hurst v. J. M. Griffin & Sons, 46 So. (2d) 440, the latter case having been also decided since the trial of the instant case, for the reason that an examination of the facts in those cases when compared with the facts disclosed by the record in the instant case, as hereinbefore set forth, will reveal that neither of those decisions will afford a ground for a reversal of the decree of the trial court in the case at bar.

The fact that the two appellants have been dispossessed of this land after having resided on the same for practically all of their lives, and who are now about 70 and 64 years of age respectively, makes this a hard case and

one which excites our sympathy in behalf of their contentions, but it so happens that the proof does not bring their defense to this suit within the requirement that an ouster must be shown of the other tenants in common in such manner as to confer title on them by adverse possession. Sections 709 and 710, Code of 1942, relied on by the appellants, were held in Hooper v. Walker, 201 Miss. 158, 29 So. (2d) 72, after reviewing the previous decisions construing them, not to constitute a bar against the true owners of land in the absence of an invasion of their possession and the existence of adverse possession by the invader for the time required; that a mere lapse of time alone does not put these statutes in operation and in the instant case nothing ever occurred to furnish notice to the other tenants in common that the possession and occupancy of the appellants was otherwise than consistent with their own rights as tenants in common.

The decree appealed from must, therefore, be affirmed.
Affirmed.