Bush *v.* Quinn, et al.

No. 41138 June 8, 1959 112 So. 2d 231

*Satterfield, Shell, Williams & Buford,* Jackson; *Armstrong & Hoffman,* Hazlehurst, for appellant.

*George B. Grubbs,* Mendenhall; *John C. Sullivan,*
*Fulton Thompson,* Jackson, for appellees.

APPELLANT IN REPLY.

Roberds, P. J.

This litigation involves the title to a tract of land consisting of one hundred acres, more or less, described in the bill and located in Simpson County, Mississippi. J. W. Bush, Sr., the appellant, contends that he is the exclusive fee simple owner of the land. The appellees contend that Bush owns only a two-thirteenth undivided interest in the land. The chancellor decided that J. W. Bush, Sr. did own a two-thirteenth interest and the appellees owned together an eleven-thirteenth interest in the proportions set out in the decree of the lower court. Bush appealed to this Court and urges that we should adjudicate him to be the exclusive and fee simple owner of said tract. There was no cross-appeal.

The question confronting us arises under these circumstances:

On May 7, 1897, the land was patented to Mitchell Quinn. On March 2, 1920, Mitchell Quinn and his wife, Elvira Quinn, executed a deed of trust on the land in favor of L. D. Spell and Company.

On January 30, 1921, Mitchell Quinn departed this life. He left as his heirs-at-law, his wife, Elvira, and twelve children. On April 23, 1921, L. D. Spell and Company assigned said deed of trust to R. J. Spell. On the same day, R. J. Spell assigned the deed of trust to Bush. On February 9, 1922, Bush undertook to substitute Sykes as trustee in the deed of trust. On March 4, 1922, Sykes, as substituted trustee, attempted to sell the land at a foreclosure sale, and he executed a deed to the land to Elvira Quinn, widow of Mitchell Quinn. It is admitted by all parties that this foreclosure sale was void and it vested no title in Elvira Quinn.

On March 16, 1932, Elvira Quinn executed a deed to Bush. This deed purported to convey the entire title to the tract of land. Elvira Quinn only had title to one-thirteenth undivided interest in the land and she conveyed to Bush only that undivided interest. Under

this conveyance, Bush became a tenant-in-common with the twelve children of Mitchell Quinn, Sr., deceased. 86 C. J. S., 364-365; Wilder v. Currie, 231 Miss. 461, 95 So. 2d 563. See also 14 Am. Jur. 90, Par. 20, where this statement appears: "A person regularly deriving title from one cotenant will be regarded as a tenant in common of the property with the other co-owners * * *"

But Bush claims that he ousted his cotenants in such way and in such manner as to divest out of them and invest in himself exclusive title to the entire ownership of said land. Whether he did that is the question involved in this lawsuit.

One of the heirs of Mitchell Quinn, deceased, was a son, Sam Quinn, and the chancellor found that Bush, under the circumstances of this case, acquired the one-thirteenth interest of Sam Quinn. Sam Quinn did not appeal from that decree. The two-thirteenth interest the chancellor established in Bush consisted of the one-thirteenth interest he got under the deed from Elvira and the one-thirteenth interest he established in himself as against Sam Quinn.

This leaves the question of whether the facts and circumstances divested out of the other heirs of Mitchell Quinn, deceased, and invested in Bush title to the remaining interest in the land.

The rule which one cotenant must meet in order to oust a fellow-cotenant has been stated by this Court in these words: "In order to establish ouster of cotenants by a tenant in common in possession, the cotenants out of possession must have notice of his adverse claim either 'from actual knowledge or as is sometimes vaguely expressed, by acts equivalent thereto', as by conduct so unequivocal that knowledge on the part of the cotenant out of possession must be necessarily presumed. Hurst v. J. M. Griffin & Sons, Inc., 1950, 209 Miss. 381, 46 So. 2d 440, 442, 47 So. 2d 811. The Hurst case further holds: 'The testimony of such knowledge by the

other tenants in common must be clear and convincing. Fox v. Wilkins, 201 Miss. 78, 28 So. 2d 577. It is not enough that the possession to convey title should be apparently adverse but must be such with actual notice to the co-tenants or shown by such acts of repudiation of their claim as are equivalent to actual notice to them.' ''

The chancellor necessarily held that Bush did not, by the evidence he introduced, meet the test for ousting his fellow-cotenants and establishing title in himself prescribed by the foregoing quoted rules. Can we say that he was manifestly wrong in his conclusion? The testimony in this case covers almost six hundred pages. It is evident that we cannot detail the testimony of each witness. We can deal only with that which appears to be decisive and of most weight.

In the first place, it will be noted that the recording of the deed from Elvira to Mr. Bush, in which she purported to convey the entire estate in the land, constituted no constructive notice to the other cotenants, the case of Peeples v. Boykin, 132 Miss. 359, 96 So. 177, having been overruled, as stated in the case of Gaddis & McLaurin, Inc. v. Nichols, supra.

In the next place, it appears that most of Bush's co-tenants resided in states other than Mississippi. That fact was remarked upon and its significance noted in the case of Gaddis & McLaurin, Inc. v. Nichols, supra.

As stated, Elvira lived upon the land after the death of her husband in 1921 until she departed this life in 1946. She and her husband had been residing on the place since he got a patent in 1897. Upon his death, Sam Quinn and his wife moved into the home with Elvira. Jim Quinn, one of the cotenants, resided with Sam in that home. But Jim was a deaf mute and in the last years became unable to see. He did not have the mental capacity to understand who might have the title to the land. So far as the other cotenants were concerned, the physical facts relating to the land appeared to be the

same as those which existed prior to the execution of the deed to Mr. Bush. Sam and his wife and Jim lived there with Elvira until her death, and after her death they continued to live on the property and work and operate it as was done prior to the execution of said deed.

There is some proof in the record that after the burial of Elvira, some of her girls, who were cotenants, remarked that Mr. Bush had been good to their mother. This remark could have related to the fact that Mr. Bush had advanced Elvira money and had not dispossessed her.

There is also proof that Mr. Bush, after the deed from Elvira, paid the taxes on the land. Notice as to this was not imputed to the other cotenants as a constructive fact because they very reasonably might have assumed that Sam was paying the taxes on the property. Also, Mr. Bush was a cotenant and it was as much his duty to pay the taxes as that of any other cotenant.

It is in evidence that repairs were made to the residence and the barn and that Mr. Bush paid for such repairs. However, it is also shown that the actual physical work was done by Sam Quinn. It is further shown that Mr. Bush sold some timber from the land, but the evidence also discloses that Sam Quinn helped to cut the timber and haul it to the purchaser, all of which, according to outward appearances, placed Sam Quinn in charge of the property, although, as above-stated, he actually was a tenant of the land under Mr. Bush.

All of this means that there was no proof that the chancellor had to accept establishing constructive or actual notice to the other cotenants of Bush, except the undisputed fact that Sam was a tenant under Bush, which, so the chancellor could have found, was not known to the other cotenants. ■■■ We do not glean from the record any evidence which compels us to the conclusion that the chancellor was manifestly wrong in his conclu-

sion that the testimony failed to establish constructive or actual notice to the cotenants of Bush that he, Bush, was claiming to own the entire interest in the property, and that he had failed to establish an ouster of his cotenants and that the entire title had vested in him as against them.

It is suggested by appellant that one witness, while testifying, stated that Mitchell Quinn, Jr., deceased, left as his only heir his widow, who resided at Gary, Indiana. The bill averred that the heirs of Mitchell Quinn, Jr., were his living brothers and sisters, and descendants of deceased brothers and sisters. The answer did not deny that. The decree so adjudicated. We do not think the fact that Mitchell Quinn, Jr. was survived by a lawful wife, who was his only heir, if such be the fact, should work a retrial of this case. We have determined that the cotenants of Bush, including Mitchell Quinn, Jr. and his heirs, were not ousted of their rights in the land. The heirs of Mitchell Quinn, Jr. can be determined. When they are determined, they will be entitled to the same rights in the land as Mitchell Quinn, Jr. would have been if he were living. The chancellor appointed a master to state an account between the parties and he also ordered a sale of the land for a division of the proceeds. The question of the heirship to the right of Mitchell Quinn, Jr. can be determined by the chancellor on remand of the cause if that procedure be necessary, without relitigating the issues involved in this proceeding.

Affirmed and remanded.

*Hall, Arrington, Ethridge* and *Gillespie, JJ.,* concur.