245 So.2d 17 (1971)
Mrs. Pattie BAYLESS, et al., Defendants/Appellants,
v.
Mrs. Lillous B. ALEXANDER, Complainant/Appellee.
No. 45976.
Supreme Court of Mississippi.
February 15, 1971.
Rehearing Denied March 15, 1971.
O.B. Triplett, Jr., Forest, for defendants-appellants.
*18 Robert H. McFarland, Bay Springs, for complainant-appellee.
PATTERSON, Justice.
This is an appeal from the Chancery Court of the Second Judicial District of Jasper County which decreed Mrs. Lillous B. Alexander to be the sole owner of the land in said county described as the Southwest Quarter of the Southeast Quarter, Section 6; the West half of the Northeast Quarter, Section 7; all in Township 1 North, Range 11 East, and commonly called the "Mill Field." The heirs of Mrs. Dorr B. Denson, with the exception of Mrs. Noby Ruth Houston, who took no part in this suit, being aggrieved by the decree, prosecute this appeal.
The appellee, Mrs. Alexander, initiated this proceeding by filing a bill to confirm title. She alleges that title is vested in her by inheritance from her husband, Clyde or C. Blankinship, one and the same person who died January 15, 1949, without children. She alleges that he acquired title through Roberta Blankinship, a non compos mentis, his sister, who acquired title to the lands by a partition deed in 1903. Thereafter, the sisters of Roberta Blankinship, n.c.m., by deed of August 14, 1930, conveyed to C. Blankinship the interest they expected to inherit from Roberta. She alleges that upon the delivery of the deed to C. Blankinship he went into the immediate possession of the land and that at all times since he kept the land under fence, farming and cutting timber from it, receiving all rents and profits therefrom, and exerting all acts of possession commensurate with ownership over it until his death in 1949. She alleges that although the deed was not efficacious to convey title at the time it was delivered (one of the grantors, Mrs. Dorr B. Denson, having died on October 3, 1931, prior to the death of Roberta, n.c.m., in 1937), nevertheless upon the death of Roberta it became an effective assertion of title when combined with an assumption of dominion over the property by the grantee, to constitute an immediate repudiation of the fiduciary cotenancy relationship which came into being upon the death of Roberta. This was sufficient, it is alleged, to be an ouster of the fiduciary relationship existing between these cotenants and to set in motion the statute of limitations. It is then alleged that the ouster, being followed by ten years adverse possession, effectively vested full title to the property in her husband and that upon his death she became vested therewith by inheritance.
She additionally alleges that since the death of her husband she has had continuous, uninterrupted, and adverse use and occupancy of the land to the present. She therefore prays that title be confirmed in her as the result of descent by operation of law, ouster, and adverse possession since January 15, 1949.
All of the heirs of Roberta Blankinship were made defendants by the bill of complaint. However, none has answered other than the heirs of Dorr B. Denson with the exception noted. Therefore, confessed and final decrees were taken against the remaining heirs.
The issues to be resolved are between the responding heirs of Dorr B. Denson and the widow of C. Blankinship. By their answer and cross bill the heirs of Dorr assert that their undivided interest in the land springs directly by inheritance from their aunt, Roberta Blankinship; that is, they inherited what their mother would have inherited had she not predeceased Roberta. They assert that the deed of Dorr conveying her expectancy of title by inheritance to C. Blankinship was ineffective to convey this interest because her demise prior to Roberta made vesting of title in her impossible of fulfillment. They therefore assert that they became cotenants contemporaneously with C. Blankinship upon the death of Roberta in 1937 and that his possession as a cotenant was not adverse to them since they did not have actual notice, or the equivalent thereof, that he claimed adversely to them in violation of the confidential and fiduciary relationship existing between them as cotenants.
*19 The main questions presented on appeal are whether the appellants as cotenants were ousted by C. Blankinship during his lifetime or by his widow subsequent to his death in 1949.
It is apparent from the record that the brother and sisters of Roberta, a non compos mentis, were concerned with her maintenance and welfare. To this end they executed the following instrument:
* * * * * *
And for and in consideration of Ten Dollars, cash in hand paid, the receipt of which is hereby acknowledged, and the further consideration of Grantee, herein, taking care of and supporting our Sister, Berta Blankinship, a non compos mentis, We, Emma J. Denson, Dor B. Denson, Eula F. Denson and Zenobia Burnham do hereby convey and quit claim to C. BLANKINSHIP grantee herein, any and all our undivided right, title claim and interest that we might possess as an heir of said Berta Blankinship, at her death in and to the property described as:
DESCRIPTION
Also all money and personal property.
Witness our signatures this the 14th day of August, A.D. 1930.
* * * * * *
The contingency mentioned in the deed, the death of Roberta, necessary to give it effect having become impossible of fulfillment due to Dorr's prior death, did not have the legal effect of conveying her expected interest to C. Blankinship. In Johnson v. Breeding, 136 Tenn. 528, 190 S.W. 545 (1916), the general rule is concisely set forth in a headnote as follows:
As the "expectancy" of an heir apparent is the bare, inchoate hope of succession, and has no attribute of property, where deceased by warranty deed conveyed his expectancy as heir of his mother, but predeceased her, his children, although taking by right of representation through him, took by inheritance immediately from the grandmother. * *
See also 3 American Law of Property, section 14.12 at 601 (1952), wherein the following rule is announced:
While the assignee's right to the expectancy is generally recognized, there are two possibilities which may operate to defeat his ultimate right to take the inheritance under the assignment. First, if the assignor predeceased the ancestor, the assignor's expectancy fails to become a realization and the assignee obtains no rights in the ancestor's estate. Here the children of the assignor are not bound by this assignment, as they are sometimes bound by their parent's release of the ancestor. Second, the ancestor has power to defeat the assignment entirely by devise of the property to some other person. * * *
The deed being ineffective to convey the expectancy of Dorr leaves the remaining question of whether it was sufficient, upon being recorded in 1938 subsequent to the death of Roberta, to constitute notice to the cotenants of the grantee that he claimed the property in its entirety rather than proportionately as a cotenant.
Upon Roberta's death C. Blankinship, her brother, inherited a part of the land from her. Concurrently therewith he acquired by deed the remaining interest of his sisters with the exception of Dorr. Simultaneously with his acquisition of interest in the land, the heirs of Dorr, appellants here, inherited from Roberta the remaining interest and became in law and in fact his cotenants.
The record reflects that C. Blankinship had exercised dominion over his incompetent sister's property prior to the execution of the deed in 1930, apparently with the consent of his sisters. This dominion, use, and occupancy continued after the delivery of the deed and was in fact in accord with its terms since the evidence is overwhelming that he assumed and fulfilled *20 the responsibility of caring for and supporting Roberta. The use of the land was characterized by fencing the property, paying taxes upon it, planting and harvesting crops upon those portions susceptible of cultivation, caring for the timber on the remaining position, and executing an oil and gas lease, all without accounting to anyone for rent or profit. His possession subsequent to the death of Roberta in 1937 continued as before except that the land was no longer assessed to her, but was assessed to "Roberta Blankinship Estate" and he cut the timber therefrom in either 1946 or 1947. His possession and use of the property after being vested with a portion of the title was, with the exceptions noted, precisely as before. Its use was also of the type and character which a cotenant has the legal right to enjoy.
The evidence does not direct our attention to fact or circumstance during Blankinship's lifetime that would reflect actual notice or the equivalent thereof to the appellants that he was claiming adversely to them. In the recent case of Quates v. Griffin, 239 So.2d 803 (Miss. 1970), we reiterated that this Court is committed to the rule that the relation of a cotenant to his other cotenants is that of a fiduciary which in turn leads to a presumption of law that the acts of a cotenant in possession are for the benefit of, and not contrary to, the interest of the other cotenants. We again applied the oft-repeated standard that this relationship can only be overcome by clear and convincing evidence that the other cotenants had actual notice of the adverse claim, or the equivalent thereof, before the statute of limitations will begin to run. We noted that upon the happening of either of the foregoing events such notice would constitute an ouster of the fiduciary relationship which, if followed by adverse possession for the statutory period of time, would ripen full title in the cotenant in possession. In the interest of stability, predictability, and simplicity of law the rule in this area was enlarged on the petition for rehearing in Quates, supra, as follows:
* * * Where one or more of several cotenants convey land by an instrument purporting to vest in the grantee the fee simple title to the entire property, and the grantee is not a cotenant at the time of the execution of the deed, and the grantee records his deed in the county where the land lies, and enters into possession asserting open and exclusive ownership thereof, the cotenants not participating in the conveyance are deemed to be ousted and on the termination of the statutory period, title by adverse possession becomes vested in the grantee. In order for such deed to constitute an ouster as aforesaid, the grantee must have had no interest whatever in the land prior to the execution of the deed, either as a cotenant by deed or as a cotenant by inheritance; nor is a quitclaim deed limiting the estate conveyed to "all my right, title and interest" in the land sufficient to set in motion the statute because it does not purport to convey the entire property. Hurst v. J.M. Griffin & Sons, Inc., 209 Miss. 381, 46 So.2d 440, 47 So.2d 811 (1950).
To oust the cotenants not joining in the deed these factors must concur, (1) the execution of the deed purporting to convey the entire interest in fee simple to one then a stranger to the title, (2) the recording of the deed, and (3) the entry of the grantee claiming the entire interest in the property. (239 So.2d at 811-812).
It is apparent, we think, that the "simple administration" rule optimistically announced in Quates is not applicable here since the deed was not executed by cotenants. Moreover, the deed did not purport to convey more than an expectancy at the time of its execution. The vesting of the entire interest of the heirs apparent was contingent upon the death of Roberta. At this time the prior death of Dorr had diminished the expectancy to less than an entire interest. There being no instrument purporting to convey in fee simple the entire interest to a stranger to the title and *21 no evidence of actual notice to the out-of-possession cotenants that Blankinship claimed in the entirety, or the equivalent thereof, we can only conclude that there was no ouster of the appellants during the lifetime of C. Blankinship.
The interest of the appellee, however, does not flow directly from a deed of conveyance. Her interest is one of descent cast upon her by inheritance. Miss. Code 1942 Ann. § 470 (1956). The testimony is undisputed that the appellee has claimed the property to the exclusion of others since the death of her husband in 1949. Her claim is one of inheritance from her husband who also claimed the entirety of the property. She has paid all taxes assessed thereon from 1949 to the present, having the assessment changed in 1952 from "Roberta Blankinship Estate" to that of "Lillous B. Alexander." Additionally, the land was administered in the Chancery Court of Jasper County and was appraised for the purpose of calculating taxes due by the estate of Clyde Blankinship. There was introduced into the record an oil, gas, and mineral lease executed solely by Mrs. Lillous B. Alexander on August 21, 1959, which was placed of record on October 2, 1959. We note that one of the appraisers was the chancery clerk of the county as well as being a nephew of Roberta, corroborating, we think, the great weight of the evidence that the property was generally regarded in the community to be that of C. Blankinship, such fact being readily admitted by this witness though he was unaware of the details of the deed to appellee's husband.
During his lifetime the appellee's husband employed a farm manager or supervisor to tend his properties. This supervisor was continued in the employ of the appellee for several years subsequent to her acquisition of the property. He gave testimony that the property was fenced on all four sides, but that the fence did not quite extend all the way to the line on the back side. However, he asserted that he cruised the timber twice each year for the appellee and marked the lines with paint.
The evidence is clear and without dispute that since the death of her husband the appellee has received all benefits flowing from the land and that she has likewise made all expenditures thereon, both without accounting to anyone. Indeed, no suggestion is made by the appellants that they claimed any of the rents or profits from the land or that they expended anything thereon. Their claim is based solely upon the naked legal presumption that the appellee held as a cotenant for their mutual benefit since there is no evidence that the appellants knew anything whatsoever about the ownership or the possession of the land.
From an early date this Court has recognized that the entry of an heir into the possession of property with a notorious claim of exclusive right may disseize the other heirs, his cotenants. Iler v. Routh's Heirs, 3 Howard 276 (1839). In Shelby v. Rhodes, 105 Miss. 255, 62 So. 232 (1913), we stated:
* * * The rule which prevents one tenant in common from purchasing an outstanding title to the common property and setting it up against his cotenant is founded upon the confidential relation which is presumed to exist between them, and has no application where the circumstances surrounding them negative any such relation, and show that they, though in law tenants in common, are not such in fact, and are asserting hostile claims against each other with reference to the common property.
The rule quoted in Rhodes, supra, a suit between the heirs of a common ancestor, was quoted with approval in Ferguson v. Chancellor, 206 Miss. 518, 40 So.2d 275 (1949), as well as Reed v. Bales, 240 Miss. 592, 128 So.2d 374 (1961). The fiduciary relationship presumed to exist between cotenants, in our opinion, has no application here since the circumstances surrounding the appellee's acquisition of title completely *22 negates any such relation to the extent that we conclude it was the equivalent of an ouster of the other cotenants. The initial entry of the appellee being followed by acts of adverse possession for more than ten years ripened full title in her at the expiration of that time. The suit being filed several years thereafter, we are of the opinion that the lower court did not err in confirming title in the appellee although his opinion made no reference to the fiduciary relationship or ouster.
Affirmed.
GILLESPIE, P.J., and INZER, SMITH, and ROBERTSON, JJ., concur.