PATTERSON, Justice:
This is an appeal from a decree of the Chancery Court of Lauderdale County confirming title to 120 acres of land in the heirs of Abe Lynch, the complainants. We affirm.
During his lifetime Mirk Hardy, the common source of title, acquired the lands presently in controversy. In April 1932 the property was sold to the State of Mississippi for taxes. Mirk died intestate in *415 1933, leaving a widow and five children. On June 16, 1936, Mirk’s widow, Carrie, purchased the land from the State through a forfeited tax land patent.
On February 12, 1939, Carrie executed a warranty deed to Abe Lynch which purported to convey the entire title to the grantee. This deed was thereafter filed for record and recorded on the land rolls of the county. Abe went into the immediate possession of the property, constructed a home upon the premises, and lived upon the tract for approximately three years. He maintained continuous contact with the property thereafter by paying the taxes, executing a mineral lease in 1944, and on one occasion selling the timber.
Abe died intestate on April 14, 1948, leaving surviving him a widow, Gertrude Lynch, two sons, Robert Lynch and Rogers Lynch, and one grandson, James Lynch. None of these heirs ever lived upon the property or exercised any physical possession over it although they continued to pay the taxes thereon.
The heirs of Abe Lynch brought this action to confirm title to the property in them against the heirs of Mirk Hardy. None of the Hardy heirs have resided upon the property since the deed was executed by Carrie Hardy to Abe Lynch.
The parties acknowledge that upon the demise of Mirk Hardy and the purchase of the property by Carrie Hardy from the State a cotenancy relationship came into existence among all of the heirs of Mirk. Miss.Code 1942 Ann. § 470 (1956).
The Lynch heirs, however, claim ouster of the other cotenants, the children of Mirk and Carrie Hardy, resulting from the execution of the deed by Carrie Hardy to Abe Lynch. They contend that the grantee was a stranger to the title, that the instrument purported to convey the entire interest in the land, that the deed was filed for record and the land was thereafter adversely possessed for more than ten years. The adverse possession, it is contended, consists of actual entry upon the land by the complainants’ predecessor, the construction of a small dwelling thereon by him, the occupancy of it, the cutting of timber and the sale of a mineral lease. During this time the taxes were paid by Abe Lynch or his descendants, beginning in 1939 to the present, a period of more than thirty years, without protestation or complaint from the Hardy heirs.
In Quates v. Griffin, 239 So.2d 803, 811-812 (Miss.1970), on petition for rehearing, the rule relating to ouster of co-tenants was stated as follows:
... We are of the opinion that in the interest of stability, justice and simplicity of the law in this area the rule should be, and is hereby declared to be, as follows: Where one or more of several cotenants convey land by an instrument purporting to vest in the grantee the fee simple title to the entire property, and the grantee is not a cotenant at the time of the execution of the deed, and the grantee records his deed in the county where the land lies, and enters into possession asserting open and exclusive ownership thereof, the coten-ants not participating in the conveyance are deemed to be ousted and on the termination of the statutory period, title by adverse possession becomes vested in the grantee. In order for such deed to constitute an ouster as aforesaid, the grantee must have had no interest whatever in the land prior to the execution of the deed, either as a cotenant by deed or as a cotenant by inheritance; nor is a quitclaim deed limiting the estate conveyed to “all my right, title and interest” in the land sufficient to set in motion the statute because it does not purport to convey the entire property. Hurst v. J.M. Griffin & Sons, Inc., 209 Miss. 381, 46 So.2d 440, 47 So.2d 811 (1950).
To oust the cotenants not joining in the deed these factors must concur, (1) the execution of the deed purporting to convey the entire interest in fee simple *416 to one then a stranger to the title, (2) the recording of the deed, and (3) the entry of the grantee claiming the entire interest in the property.
It is apparent from the record that the first two requirements of the Quates test were fulfilled. The deed executed by Carrie Hardy to Abe Lynch, a stranger to title, purported to convey the entire interest in fee simple and the deed was properly recorded. It is undisputed that Abe entered upon the property after acquiring the deed and exercised exclusive acts of ownership over it. He constructed a small home thereon, sold the timber, executed a mineral lease, and either he or his heirs have paid all of the taxes on the property since the original entry. Although Abe and his heirs were not physically present for the entire prescriptive period, we are of the opinion that their public acts of ownership were sufficiently hostile, open, notorious and continuous to vest title in them by adverse possession.
In McCaughn v. Young, 85 Miss. 277, 37 So. 839 (1904), this Court held that the payment of taxes and the sale of timber by one who had entered upon land under color of title, the other claimants to the land having knowledge of their possession and claim, were sufficient to set the statute of limitations in motion and it was not tolled, nor possession lost, by the adverse claimant moving from the land since he continued to pay the taxes and offered the land for sale. The Court stated:
The underlying principle on which is founded the rule requiring that possession must be open and notorious before it can be considered adverse to the real owner is that such character of possession is presumptive notice to the true owner of such possession and adverse claim. But the rule does not apply in cases where the party against whom the adverse claim is asserted has actual knowledge of such adverse possession. A possession which is adverse and actually known to the true owner is equivalent to a possession which is open and notorious and adverse. . . . The doctrine is concisely stated in this form: “If the owner have actual knowledge that the possession is adverse to his title, the occupancy need not be open, visible, and notorious. Notoriety is important only where the adverse character of the possession is' to be brought home to the owner by a presumption.” (85 Miss, at 293-294, 37 So. at 842.
The Court also commented upon the loss of possession or a break in the continuity of adverse occupancy as follows :
. “Possession of land once acquired is not lost by a removal from it, if the party removing has color of title, and by his acts manifests an intention still to claim and use it.” . . . (85 Miss. at 294, 37 So. at 843.)
The uncontradicted occupancy provoked this comment by the Court :
The testimony of Rozell, standing as it does uncontradicted, shows no intention on his part to surrender his possession, and he continued to treat the land as his own by paying taxes and offering the same for sale. Nor did appel-lee consider the land as abandoned, for he made no effort to re-enter, and, according to the statement of appellant, impliedly acquiesced in and recognized appellant’s assertion of ownership — made no claim of title even when appellant had entered into actual occupancy and was engaged in deadening the timber and clearing the land. (85 Miss. at 295, 37 So. at 843.)
Cf. Jagoe v. Carrier Lbr. & Mfg. Co., 119 Miss. 564, 81 So. 132 (1919), and Leavenworth v. Reeves, 106 Miss. 722, 64 So. 660 (1914).
While we are not able to say that the payment of taxes and the sale of timber would be adequate in this particular case to , constitute actual possession, these acts when coupled with actual occupancy *417 under color of title, a deed purporting to convey the entire interest, the construction of a dwelling, the execution of a mineral lease, were sufficient in our opinion upon the passage of the prescriptive time to ripen title in the heirs of Abe Lynch. The recording of the deed was the equivalent of actual knowledge by the Hardy heirs that Abe Lynch claimed adversely to them. This knowledge is imputed to them by operation of law through the recording of the deed, the express terms of which purported to convey the entire interest. The legal presumption that one cotenant holds property for the benefit of his cotenants, as well as for himself, is thus refuted and an ouster occurs. The question remains whether title vested in the Lynch heirs by continuous adverse possession subsequent to the ouster.
The actual occupancy of Abe for approximately three years, mentioned above, was sufficient to set the statute in motion and this possession was not lost by the adverse claimant when he moved from the land, but rather was continued by the payment of taxes each year either by himself or his descendants. The Hardy heirs did not protest the payments or the possession. The record reflects they made no attempt to pay the taxes for more than thirty years nor did they engage in any activity upon the land that could in any manner be depicted as an act of ownership. Their possession was limited, by their testimony, to infrequent visits to the property in search of berries or other fruits. At best their possession was slight and sporadic.
The requirements enumerated in Quates for the ouster of cotenants have been met, and being followed by adverse possession for more than ten years we are of the opinion the decree of the chancellor which confirmed title in the heirs of Abe Lynch should be affirmed.
Affirmed.
GILLESPIE, C. J., and JONES, IN-ZER, and ROBERTSON, JJ., concur.