LEE, Justice,
for the Court:
This suit involves a partition proceeding between fifty-seven (57) descendants of John (Bolier) Dedeaux. Victor Dedeaux and Nettie Dedeaux instituted the suit in the Chancery Court of Harrison County seeking a partition of one hundred sixty (160) acres of land in said county, and other heirs at law of John Dedeaux, Jr. filed suit to confirm their title to said lands, claiming by adverse possession. The chancellor held there was no ouster of the cotenants and no adverse possession, and entered a decree ordering a partition sale of the property. The aggrieved parties appeal here.
The sole question to be decided is whether or not the trial court erred in holding that there was no ouster of the cotenants and no adverse possession.
The 160-acre tract of land was patented to John (Bolier) Dedeaux by the United States Government on March 20, 1890. Subsequently, in 1898, he died intestate leaving as sole heirs at law, his widow and six (6) children. All those individuals died intestate and all had children, except Henry, who was crippled and unmarried. One of those children was John Dedeaux, Jr., later known as Uncle Mune. His descendants claim the land through adverse possession. The record indicates the following:
(1) On March 4, 1901, the land was sold for delinquent taxes to the State of Mississippi and redeemed by John Dedeaux on March 24, 1902.
(2) On March 27, 1911, John Dedeaux executed a turpentine lease to Imperial Naval ■Stores.
(3) On February 4, 1920, John Dedeaux executed an oil, gas and mineral lease to Cyrene S. Drennon.
(4) On July 5, 1927, the land, assessed to John Dedeaux, sold to M. B. McCauley for delinquent 1926 taxes and was redeemed by John Dedeaux.
(5) On August 6, 1930, the land, assessed to John Dedeaux, sold to Albert Bradley for delinquent 1929 taxes.
(6) On October 26, 1931, Albert Bradley executed a quitclaim deed to John Dedeaux covering said lands.
(7) On September 19, 1932, the lands, assessed to John Dedeaux, sold to the State of Mississippi for delinquent 1931 taxes and was redeemed by John Dedeaux.
(8) On December 19,1932, tax deeds were executed from the tax collector to Albert Bradley, conveying the said lands.
(9) On July 20, 1934, John Dedeaux and wife executed an oil, gas and mineral lease to the Texas Company covering said lands.
(10) On July 19, 1944, a release of said lease was executed by the Texas Company to John Dedeaux.
(11) On September 20, 1965, said lands, assessed to John Dedeaux, were sold to Edsel E. Stewart for delinquent 1954 taxes and were redeemed by John Dedeaux.
The evidence for appellants indicated that John (Mune) Dedeaux, Jr., exercised use of the land and paid taxes, redeemed the land when sold for taxes, cut timber upon it, grazed cattle, executed oil and gas leases, leased for turpentine extraction and obtained homestead exemptions on said land. No accounting was made to any of the other cotenants for any rents or profits received from said land and without any request for contribution as to taxes or any moneys expended in connection with the property. John (Mune) Dedeaux, Jr., exercised ownership over the property during his lifetime, died in 1958, and his heirs continued to exercise such ownership and to receive benefits and make expenditures in regard to the property.
*715 The evidence is clear that no actual notice was given by John (Mune) Dedeaux, Jr. or his heirs at law to the other cotenants that the land was being claimed adversely to them. The rule is well established that a eotenant in possession of land, or exercising ownership over land, occupies a fiduciary relationship to the other cotenants and that the acts of a cotenant in possession of land are for the benefit of the other cotenants. Such relationship can be overcome only by clear and convincing evidence that those cotenants had actual notice of the adverse claim, or the equivalent thereto, before the statute of limitations will begin to run. Bayless v. Alexander, 245 So.2d 17 (Miss. 1971); Quates v. Griffin, 239 So.2d 803 (Miss.1970).
The case of Hemphill v. Willis, 300 So.2d 458 (Miss.1974) is similar to the case sub judice. There, the Court said:
“It is alleged that sometime before Oc- . tober 3, 1893, one Bob Willis obtained title to the above described eighty (80) acres of land. Bob Willis and his wife died before 1910, leaving several children. Their son, Bob Willis, and his wife, and Dave Willis, a grandson, and his wife remained on the described property. Dave Willis claimed the property as his after his father’s death in 1944. Dave Willis’ widow, Hattie Willis, remained on the property and farmed the property with their son Allen Willis, the cross-complainant. During the time after the death of the original owner, Bob Willis, his grandson Dave Willis, and his wife, Hattie, together with the cross-complainant Allen Willis, had complete control of the land. They farmed the property; they fenced it; they leased it; they paid taxes on the land; and they did all acts consistent with ownership.” 300 So.2d at 459.
The court held in Hemphill, such occupancy did not overcome the presumption that same was for the benefit and use of all cotenants, and that the use by the cotenants in possession was not sufficiently clear and convincing to establish an ouster of the cotenants not in possession. The acts of ownership exercised by John (Mune) De-deaux, Jr. and his heirs at law were not inconsistent with the acts of a cotenant and they do not constitute an ouster of the other cotenants.
We now consider the question of whether or not the tax sale of said land to Albert Bradley on August 6,1930 for delinquent 1929 taxes resulted in an ouster of the other cotenants when Bradley executed a quitclaim deed of the land to John Dedeaux. In Quates v. Griffin, supra, the Court said:
“We are of the opinion that in the interest of . the rule should be and is hereby declared to be, as follows: Where one or more of several contenants convey land by an instrument purporting to vest in the grantee the fee simple title to the entire property, and the grantee is not a cotenant at the time of the execution of the deed . . . . In order for such deed to constitute an ouster as aforesaid, the grantee must have had no interest whatever in the land prior to the execution of the deed, either as a cotenant by deed or as a cotenant by inheritance; nor is a quitclaim deed limiting the estate conveyed to ‘all my right, title and interest’ in the land sufficient to set in motion the statute because it does not purport to convey the entire property.
* * * * * *
. To oust cotenants not joining in the deed these factors must concur, (1) the execution of the deed purporting to convey the entire interest in fee simple to one then a stranger to the title, (2) the recording of the deed, and (3) the entry of the grantee claiming the entire interest in the property.” 239 So.2d at 811, 812.
In Griggs v. Griggs, 218 Miss. 433, 67 So.2d 450 (1953), the Court said:
“The authorities are uniform in affirming the general rule that when one of several co-owners of property acquires a tax title thereto, his purchase amounts merely to a payment of the taxes or a redemption from the sale, and gives him *716 no rights against his associates except in so far as they may fail or refuse to contribute to the expenditure so made. And this rulé prevails whether the tax deed was procured to be executed directly to the tenant or to a third person through whom he claims as grantee, . . .” 218 Miss, at 441, 67 So.2d at 453.
See also Howard v. Wactor, 41 So.2d 259 (Miss.1949); Clausell v. Riley, 188 Miss. 647, 196 So. 245 (1940).
On October 26, 1931, Albert Bradley executed a quitclaim deed to John Dedeaux covering said land. The period for redemption of the land from the tax sale would not have expired until August 6, 1932. Therefore, the quitclaim deed from Albert Bradley simply amounted to a redemption of the land by John Dedeaux, and to Bradley’s conveying unto Dedeaux all his interest in the tax sale, and place John Dedeaux in the same position, as if he had bought the land at the tax sale himself. The fact that the tax collector executed tax deeds to Bradley on December 19, 1932, does not change the situation.
We are of the opinion that the tax sale and deed from Bradley to Dedeaux did not constitute an ouster of the cotenants.
We cannot say that the lower court was manifestly wrong in its finding of fact on the issues discussed and the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.